ORIGINAL

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
CHRISTOPHER J. CHAUDOIR (State Bar No. 198444)
cchaudoir@orrick.com
KHAI LEQUANG (State Bar No. 202922)
klequang@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

Attorneys for Plaintiff
MUTUAL CREDIT CORPORATION
AND SPURLING GROUP II, LLC

FILED
CLERK, U.S. DISTRICT COURT

AUG 11 2009

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MUTUAL CREDIT CORPORATION AND SPURLING GROUP II, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. CV 09-05215-SGL (OPx) <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **1. BREACH OF CONTRACT** <br> **2. SPECIFIC PERFORMANCE** <br> **3. DECLARATORY RELIEF** <br> **4. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br> **5. UNFAIR COMPETITION** <br><br> **JURY TRIAL DEMANDED** |

1    Plaintiffs Mutual Credit Corporation ("MCC") and Spurling Group II, LLC

2    ("Spurling"), by and through their attorneys, for their claims against The Lincoln

3    National Life Insurance Company, as successor by merger to Jefferson-Pilot Life

4    Insurance Company ("Lincoln"), allege as follows:

5                              **NATURE OF ACTION**

6        1.    Lincoln has engaged in a conscious and deliberate effort to deprive

7    Spurling of its rights by assignment to three life insurance policies (the "Policies")

8    issued on the life of Dr. Gordon R.A. Fishman M.D. ("Dr. Fishman"). At every

9    turn, Lincoln has sought to avoid its obligations under the Policies. In its complaint

10   filed against MCC and others on October 11, 2007, Lincoln sought to void the

11   Policies, purportedly on the grounds of alleged misrepresentations by Dr. Fishman

12   and a claimed lack of insurable interest. These claims were brought without

13   probable cause and in conflict with Lincoln's own policy language. Moreover,

14   Lincoln continued to press those claims even when it was clear that there was no

15   merit to Lincoln's claims. With the prospects of prevailing on these claims waning,

16   Lincoln then concocted a claim of policy lapse. Lincoln's actions were malicious

17   and in extreme bad faith in that Lincoln did not: (i) have probable cause for the

18   claims asserted in its complaint, and brought such claims with malice and ill will

19   towards the Defendants; (ii) provide Spurling with the requisite contractual and/or

20   statutory notice of a potential lapse, but rather intentionally withheld that

21   information from Spurling; (iii) properly interpret, calculate or apply its policy

22   language and/or misrepresented that language in a deliberate effort to cause the

23   policies to prematurely lapse; (iv) apply the most recent premium payments in a

24   timely and proper fashion; and (v) have a reasonable or justifiable basis for denying

25   reinstatement of the Policies.

26                                **PARTIES**

27       2.    Plaintiff MCC is an entity organized and existing under the laws of the

28   state of California, located at 20 Pacific, Irvine, California.

3.      Plaintiff Spurling is an entity existing under the laws of Delaware, located at 815-A Brazos Street, Suite 228, Austin, TX 78701. Spurling claims an interest in the life insurance policies at issue in this action and has been paying the premiums on the policies.

4.      Upon information and belief, Defendant Lincoln is a life insurance company organized and existing under the laws of the State of Indiana, with its principal place of business located at 1300 South Clinton Street, Fort Wayne, Indiana 46802.

5.      The true names and capacities of the remaining defendants are unknown to the Plaintiffs at this time. Those defendants have been named fictitiously herein as DOES 1 through 10. Plaintiffs reserve the right to amend these claims to specifically identify each one of these remaining defendants as their identities become known. Each of the fictitiously designated defendants is in some manner legally responsible or liable for the events and happenings referred to herein, and for the injury or damages or other relief hereinafter alleged.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states. Supplemental jurisdiction over this matter also exists, pursuant to 28 U.S.C. 1367.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

8.      The instant action constitutes a related case under Central District Local Rule 83-1.3(a)-(c). It is related to a previously pending case in this district, *Lincoln National Life Insurance Company, v. The Gordon R.A. Fishman Irrevocable Life Trust, et al.*, Case Number ED CV 07-1338 SGL (OPx) (the "Lincoln Action").

# FACTUAL BACKGROUND

**A.    The Life Insurance Policies and Assignment to Spurling**

9.    On or about October 14, 2005, Lincoln issued three life insurance policies, bearing policy numbers JF5524737, JF5524738 and JF5524743, with face values of $10,000,000 each, on the life of Dr. Fishman (the "Policies"). True and correct copies of the Policies are attached hereto as Exhibit 1.

10.    The Policies were sought by Dr. Fishman for estate planning purposes. Because Dr. Fishman did not want to exhaust his available capital at the time he procured the Policies, Dr. Fishman chose to finance the purchase of the policies using non-recourse loans offered by MCC.

11.    Upon issuance of the Policies, all right, title and interest in the Policies were collaterally assigned to MCC as security for MCC's loans to a trust created to purchase and hold the Policies.

12.    MCC recorded collateral assignments of the Policies with Lincoln and on January 6, 2006 Lincoln confirmed the recordation in writing.

13.    In early, 2006, MCC transferred the notes, and, thus, its collateral assignment of the Policies, to Spurling.

14.    To effectuate the transfer of the collateral assignments to Spurling, on March 2, 2006, MCC released the assignments in the Policies and Lincoln confirmed the release in writing on March 11, 2006.

15.    On March 3, 2006, Spurling thereafter recorded collateral assignments of the Policies with Lincoln and Lincoln confirmed the recordation in writing on March 13, 2006.

16.    On November 1, 2006, Spurling notified Lincoln in writing that its mailing address was being changed to 114 Pacifica, Suite 120, Irvine, CA 92618.

17.    As assignee, Spurling paid the premiums on the Policies to Lincoln and payments in excess of $1.2 million for each policy have been made to Lincoln.

**B.      Lincoln's Bad Faith Pursuit of its Declaratory Relief Claim**

18.      On October 11, 2007, Lincoln filed a lawsuit against, <u>inter</u> <u>alia</u>, Dr. Fishman and MCC for a declaratory judgment allowing Lincoln to rescind the Policies (the "Lawsuit").  Lincoln filed a First Amended Complaint on September 9, 2008, adding Spurling as a defendant (the "Complaint").  The Complaint included two claims:  one based on alleged misrepresentations made by Dr. Fishman (the "First Claim"), and one for the purported lack of an insurable interest in the Policies (the "Second Claim").

19.      Lincoln filed this action based upon a letter it received from a lawyer purporting to represent Dr. Fishman (the "Grad letter"), but without comparing the Grad letter to the documents in Lincoln's possession to determine if the Grad letter had accurately described the terms of the MCC loan documents.

20.      Lincoln did not attempt to contact MCC before filing suit to determine if the Grad letter accurately described MCC's loan program.

21.      The Grad letter, upon which Lincoln based its Lawsuit, was replete with inaccuracies.

22.      Lincoln failed to conduct any reasonable investigation into the claims made in the Grad letter before bringing its Lawsuit.

23.      Despite the fact that Lincoln learned shortly after filing the Lawsuit that its basis for doing so – – the assertions in the Grad letter – – were wrong, Lincoln continued to press its claims for more than a year.

24.      Faced with a summary judgment motion, Lincoln dismissed its First Claim with prejudice on May 15, 2009.

25.      On July 10, 2009, the Court granted summary judgment on Lincoln's Second Claim in favor of Spurling and MCC, finding no triable issue of fact to support that Claim.

**C.    Lincoln Fails to Provide Proper Notice of Lapse and Intentionally Withholds Information from Spurling.**

26.    Each policy provides that "[i]f on a Monthly Anniversary Day the Cash Surrender Value is less than the monthly deduction due, [the insured's] policy will enter the grace period unless the Coverage Protection Guarantee is in effect."[1]

27.    Each policy further provides that Lincoln "will notify [the insured] and any assignee of the minimum amount due at least 30 days before the end of the grace period". Exhibit 1, page 7 (emphasis added).

28.    Only if the "amount specified [in the notice] is not paid within the grace period," will the policy terminate. Exhibit 1, Page 7.

29.    California Insurance Code section 10173.2 also requires that an insurer provide, at least 10 days before a policy lapses, written notice to an assignee of a policy that the insured has failed to make a premium payment.

30.    Despite having knowledge that Spurling was the assignee of the Policies, Lincoln repeatedly failed to and/or purposefully refused to provide critical and required information concerning the Policies to Spurling.

31.    Only through discovery in the underlying action has Spurling learned that Lincoln ignored Spurling's November 2006 notice of change of address, sending crucial Policy information to an incorrect address instead.

32.    Spurling also discovered that Lincoln had actual knowledge that its notices were not received by Spurling as the communications were repeatedly returned undeliverable with "Not Deliverable as Addressed" and "Unable to Forward" stamps affixed to them.

33.    Spurling's efforts to obtain information concerning the Policies by telephone were also consistently stymied. In both December 2008 and January 2009, prior to Lincoln's claimed lapse and termination of the Policies, Spurling

---

[1] All capitalized terms, not otherwise defined herein, have the meanings ascribed to them in the Policies.

1  representatives called Lincoln to request information concerning policy values and
2  premiums due.  Spurling further requested that Lincoln provide any grace notices
3  Lincoln had sent related to the Policies.  In response, Lincoln placed Spurling on
4  hold for extended periods of time (as long as a half an hour) before any Lincoln
5  representative would discuss their requests with them.  Still, Lincoln would not and
6  did not provide the grace notices to Spurling.

7    34.    Additionally, on at least two occasions prior to January 14, 2009 (the
8  date on which Lincoln contends the policies lapsed) Lincoln's representatives
9  advised the individuals that Lincoln could not and would not provide Spurling with
10  the requested information.  Lincoln took the unreasonable position that Spurling's
11  request required more "specificity" before information would be provided.  At no
12  time during these conversations did Lincoln advise Spurling that Lincoln believed
13  the policies would lapse in a matter of days.

14    35.    Even Lincoln's counsel withheld information concerning Lincoln's
15  belief that the Policies were soon to lapse.  This, despite an agreement with
16  Lincoln's counsel that Spurling would pay premiums until the underlying action
17  was resolved.  To the contrary, Lincoln counsel advised as late as December 21,
18  2008, that the Policies were "active" even though a grace notice had been sent (to
19  the wrong address, just one week earlier) indicating that the Policies would soon
20  lapse.

21  **D.    Lincoln Misrepresents, Ignores and Incorrectly Applies the Coverage**
22  **Protection Guarantee in Declaring a Lapse.**

23    36.    In a notice dated January 20, 2009, while the Lawsuit was pending,
24  Lincoln informed Dr. Fishman that the Policies had lapsed, due to the alleged
25  failure to timely remit premiums due.  While the notice also copied Spurling, it was
26  again sent to the wrong address, and, thus, was not received by Spurling.

27

28

37. Spurling and MCC learned of this claimed lapse on January 28, 2009, when Lincoln's counsel informed Spurling and MCC's counsel that Lincoln contended that the Policies had lapsed on January 14, 2009.

38. In fact, the Policies had not lapsed.

39. The Policies include a Coverage Protection Guarantee. The Coverage Protection Guarantee protects the Policies from entering the grace period provided the coverage is in effect.

40. The Coverage Protection Guarantee is an alternate policy value calculated in the same manner as the actual Policy Value but utilizing different charges.

41. As detailed in the Policies, "[w]hen the Coverage Protection Guarantee is in effect, this guarantee will provide that this policy will not enter the grace period because the policy's Cash Surrender Value is insufficient to cover the current monthly deductions as defined in the policy." Exhibit 1, page 11.

42. The Coverage Protection Guarantee is "in effect if the total of the Coverage Protection Accounts (herein referred to as 'CPA I', 'CPA II' and "CPA III' or the 'account(s)') equals or exceeds Debt. The total of the Coverage Protection Accounts is a value equal to what the Policy Value would have been if calculated using the provisions described below." Exhibit 1, page 11.

43. "Debt" is defined by the Policies as "[t]he principal of a policy loan together with interest due." Exhibit 1, page 5.

44. There neither were, nor are, policy loans on the Policies. Thus, the value of the Coverage Protection Accounts must equal or exceed zero for the Coverage Protection Guarantee to be in effect.

45. The value of the Coverage Protection Account is defined in the Policies as "[t]he value of CPA I, CPA II and CPA III on the Policy Date will be equal to all net premiums allocated to each account. The value of each account is then determined on each Monthly Anniversary Day by accumulating with interest

1   the value of the prior month increased by net premiums credited to that account and

2   decreased by monthly deductions charged to that account and by the reduction in

3   value caused by an partial surrender charged to that account since the preceding

4   Monthly Anniversary Day." Exhibit 1, page 11.

5       46.   At the time Lincoln declared a lapse of the Policies, the CPA Accounts

6   for each policy equaled or exceeded zero and the Coverage Protection Guarantee

7   should have been in effect. As such, the Policies could not have entered into the

8   grace period, much less have lapsed or have been terminated by Lincoln.

9       47.   Lincoln blatantly disregarded this fact and persisted in claiming that

10   the Policies had lapsed for failure to pay premiums.

11       48.   Even after Spurling detailed that the Coverage Protection Guarantee

12   was in effect and that the Policies could not have entered the grace period, Lincoln

13   continued, and continues, wrongly to insist that the Policies have lapsed and are

14   terminated, offering a strained and unreasonable interpretation of the policy

15   language to justify its position.

16   **E.**    **Lincoln's Bad Faith Denial of Reinstatement**

17       49.   On January 30, 2009, after Lincoln now claims the Policies had lapsed,

18   Spurling sent to Lincoln premium payments in the amount of $240,167.25.

19       50.   For over three months, Lincoln held the premium payments paid by

20   Spurling on January 30, 2009 – – not attempting to return those payments until

21   May 27, 2009.

22       51.   Although Spurling believed there had been no lapse, on April 17,

23   2009, Dr. Fishman and Spurling conditionally sought reinstatement of the Policies

24   pursuant to the right of reinstatement in the Policies, should there be a

25   determination that the Policies had lapsed.

26       52.   On May 6, 2009, Lincoln denied Dr. Fishman's application for

27   reinstatement, citing as its only reason the purported lack of insurable interest for

28   the Policies.

1    53.    Lincoln continued to deny reinstatement even after the Court granted

2    MCC and Spurling's motion for summary judgment, in which the Court found that

3    there *was* an insurable interest in the Policies.

4                            **FIRST CAUSE OF ACTION**

5                            **BREACH OF CONTRACT**

6    54.    Spurling realleges the allegations contained in paragraphs 1 through

7    53.

8    55.    Each of the Policies contains language obligating Lincoln to provide

9    notice of any lapse to assignees.

10   56.    Each Policy also provides that the policy will not enter the grace

11   period if the Coverage Protection Guarantee is in effect.

12   57.    Each Policy also contains the following promise by Lincoln: "We will

13   not use any statement by or for the Insured to void this policy or to deny a claim

14   unless it is contained in an application."

15   58.    Lincoln breached the Policies:

16   A.    In violation of its obligation to provide notice of the minimum

17          premium amount due at least 30 days before the end of the grace period

18          to Spurling, Lincoln did not provide that notice, but still declared a

19          lapse of the Policies on January 14, 2009 and terminated the Policies

20          on that date;

21   B.    In violation of the Coverage Protection Guarantee, Lincoln failed to

22          properly calculate the Coverage Protection Value, such that Lincoln

23          wrongfully claimed that the value of the CPA Accounts were less than

24          zero at the time Lincoln declared a lapse and wrongfully concluded that

25          the Coverage Protection Guarantee was not in effect, thereby claiming

26          the Policies entered into the grace period.  In reality, the Policies did

27          not enter the grace period and Lincoln breached the Policies by

28

1   declaring a lapse on January 14, 2009 and terminating the Policies on

2   that date;

3   C.   Contrary to its promise not to use any statements to void the Policies

4   unless contained in an application, Lincoln has sought to void the

5   Policies based on alleged statements in interviews and in loan

6   documents that were not contained in the applications.  Indeed, the

7   bulk of the First Claim is based on alleged misrepresentations by

8   Dr. Fishman that Lincoln concedes in the Complaint were not made in

9   the applications.

10   59.   As a direct and proximate result of Lincoln's breaches of the Policies

11   as described above, Spurling has suffered damages consisting of the premiums paid

12   to Lincoln.  Spurling also has suffered damages consisting of the benefits of the

13   Policies that would have been owed on the death of Dr. Fishman.  Spurling has also

14   been damaged in the lost value of the Policies and other policies held as security by

15   Spurling, and in its reputation and good will in the industry.  Finally, Spurling has

16   been damaged by being forced to incur legal expenses in defending against

17   Lincoln's efforts to void the Policies contrary to its promise not to do so, based on

18   statements allegedly made outside of the applications.

19   **SECOND CAUSE OF ACTION**

20   **SPECIFIC PERFORMANCE**

21   60.   Spurling realleges the allegations contained in paragraphs 1 through

22   59.

23   61.   The premiums charged for the Policies and paid by Spurling were the

24   fair and reasonable value of the insurance coverage and other features of the

25   Policies based on actuarial calculations performed by or for Lincoln and based on

26   the fact that Lincoln included funding for its own administrative expenses as part of

27   the premium, so that the consideration for the Policies was adequate and the

28   Policies were fair, just and reasonable as to Lincoln.

62.     Lincoln has failed and refused, and continues to fail and refuse, to perform the requirements of the Policies, in that Lincoln incorrectly declared a lapse of the Policies and terminated them on that basis.  In so doing, Lincoln failed to provide contractual and statutory notices to Spurling as required before declaring a lapse and terminating the Policies and failed to calculate the Coverage Protection Guarantee in the manner Spurling reasonably expected, such that the Policies had not entered into the grace period and could not have been terminated.

63.     Spurling has no adequate remedy at law in that lapse and termination of the Policies render Spurling's security interest in the Policies worthless.

## THIRD CAUSE OF ACTION

## DECLARATORY RELIEF

64.     Spurling realleges the allegations contained in paragraphs 1 through 63.

65.     A dispute has arisen and an actual controversy exists as to whether the Policies are in force.  Lincoln contends that the Policies have lapsed due to the alleged late payment of premiums.  Spurling contends that Lincoln failed to provide the requisite contractual and statutory notice before declaring a lapse and terminating the Policies.  Spurling also contends that the Coverage Protection Guarantee was in effect, that the Policies had not entered the grace period at the time Lincoln declared a lapse and termination of the Policies and that the Policies are therefore valid.  For these reasons Spurling contends that the Policies have not lapsed and remain in full force and effect.

66.     Spurling contends in the alternative, that if the Policies did lapse, they were or should have been reinstated by Lincoln and/or Lincoln is estopped from denying reinstatement due to (i) Lincoln's acceptance of premiums after the alleged lapse and/or after knowledge of the grounds for lapse; and (ii) a failure by Lincoln to support a reasonable denial of reinstatement.

67.     Spurling desires a judicial declaration of the rights and obligations of the parties, and such declaration is necessary in order for the parties to ascertain their rights and obligations under the Policies and contentions set forth herein.

### FOURTH CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING

68.     Spurling realleges the allegations contained in paragraphs 1 through 67.

69.     The Policies imposed on Lincoln a duty to act in good faith and to deal fairly with Spurling as the assignee of the Policies in the administration of the Policies. As part of that duty, Lincoln was required to give the interests of Spurling at least as much consideration as its own interests, and interpret the Policies, notices under the Policies, and any information Spurling was required to submit under the Policies reasonably and in good faith so as to effectuate the reasonable expectations of Spurling.

70.     Lincoln has breached its duty of good faith and fair dealing by:

A.      Pursing a declaratory judgment action against Dr. Fishman, MCC and Spurling without proper cause for disputing the validity of the Policies and based upon a willfully misguided and outright false interpretation of the Policies;

B.      Failing to conduct any reasonable investigation into the alleged claims in the Lawsuit and conducting a biased investigation intended to target MCC and the premium finance industry;

C.      Pursuing patently unreasonable litigation and litigation tactics to avoid payment of claims and to unfairly target and attack the premium finance industry;

D.      Failing to give Spurling notice of a potential lapse of the Policies, despite a contractual and statutory obligation to do so;

E.  Thwarting Spurling's efforts to obtain information concerning the Policies, despite Lincoln's obligation to provide that information to them;

F.  Withholding information concerning its belief that the Policies were in the grace period and would lapse shortly;

G.  Misrepresenting, ignoring or refusing to apply the Coverage Protection Guarantee, such that Lincoln declared a lapse and terminated the Policies in violation of the Coverage Protection Guarantee;

H.  Persisting in its termination of the Policies, despite having retained premium payments that would render the Policies current;

I.  Wrongfully denying reinstatement based on unsound and knowingly false reasons; and

J.  Engaging in abusive practices, as set forth above, to avoid payment of claims.

71.  In bad faith and to advance its own economic interests, Lincoln pursued a declaratory judgment action on grounds that it knew to be false or were willfully misguided based on interpretations of the Policies, failed to provide notice of lapse to the correct Spurling address despite having notice of the correct address, ignored Spurling's repeated request for policy information and calculated the Coverage Protection Guarantee in a manner as to treat the Policies as if they were in the grace period, all so that Lincoln could declare a lapse of the Policies and terminate them. Moreover, Lincoln did each of these things while attempting to void the policies in the underlying lawsuit to avoid its obligations under the Policies. In the process, Lincoln has deprived Spurling of the protections for which it is entitled as the assignee of the Policies.

72.  As a direct and proximate cause of Lincoln's bad faith actions, Spurling has been forced to retain attorneys to secure the benefits of the Policies and Spurling is entitled to recover those attorney fees as damages for Lincoln's bad

1   faith.  Spurling has also been damaged, in an amount to be proven at trial, in the

2   reduced value of the Policies that secured the MCC loans.

3       73.    MCC and Spurling have also been damaged in their reputation and

4   good will which has reduced the value of their loan portfolios and the value of the

5   insurance policies securing the loans in those portfolios.

6                       **FIFTH CAUSE OF ACTION**

7                          **Unfair Competition**

8                      **Cal. Bus & Prof. § 17200 et seq.**

9       74.    Spurling realleges the allegations contained in paragraphs 1 through

10  73.

11      75.    California Business and Professions Code § 17200 prohibits any

12  unlawful, unfair, or fraudulent business practices.

13      76.    As set forth above, Lincoln has engaged in unlawful, unfair, and

14  fraudulent business acts or practices in violation of Section 17200.

15      77.    Spurling has suffered an injury in fact and has lost the benefit of its

16  interest in the Policies as a result of Lincoln's business acts, omissions,

17  misrepresentations and practices alleged herein.

18      78.    Accordingly, Spurling is entitled to equitable relief, including

19  injunctive relief, restitution, and disgorgement of profits.

20      WHEREFORE, Spurling prays for judgment as follows:

21      1.    For an order requiring Lincoln to reinstate the Policies effective

22  immediately if Dr. Fishman is alive, or effective on the date of the claimed

23  termination, or on a date thereafter when Dr. Fishman was alive, subject to payment

24  of premiums owed from the date of reinstatement to the present or to his death if he

25  is deceased.

26      2.    For a declaration of the rights and obligations of the parties, and that

27  the declaration provide that the declaration provide that the Policies were

28  improperly terminated and at all times actually were in force, subject to Spurling

paying any premium owed as of the date of the declaration, or alternatively that the Policies are deemed reinstated effective immediately if Dr. Fishman is still alive, or effective on the date of termination, or on a date thereafter when Dr. Fishman was alive, subject to payment of premiums owed from the date of reinstatement to the present or to his death if he is deceased.

3.     For a court order enjoining Lincoln from engaging in any unlawful, unfair or fraudulent business acts or practices, within the meaning of Business and Professions Code section 17200 et seq., including without limitation, the wrongful calculation of the Coverage Protection Guarantee in its insurance contracts.

4.     For restitution and disgorgement of profits.

5.     For damages in an amount to be determined at trial.

6.     For attorney fees and costs according to proof at trial.

7.     For pre-judgment interest according to proof.

8.     For costs of suit incurred herein.

9.     For such other relief as the Court deems just and proper.

Dated:  August 10, 2009          ORRICK, HERRINGTON & SUTCLIFFE LLP


_____
WILLIAM A. MOLINSKI
Attorneys for Plaintiffs
MUTUAL CREDIT CORPORATION
AND SPURLING GROUP II, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **JURY DEMAND**

Mutual Credit Corporation and Spurling Group II, LLC hereby demand a trial by jury of all claims that are triable to a jury in this action.

Dated:  August 10, 2009            ORRICK, HERRINGTON & SUTCLIFFE LLP

_____
WILLIAM A. MOLINSKI

Attorneys for Plaintiffs
MUTUAL CREDIT CORPORATION
AND SPURLING GROUP II, LLC

JEFFERSON PILOT
FINANCIAL

GORDON R A FISHMAN

7 RIDGELINE DR
NEWPORT BEACH CA 92660

**EXHIBIT 1    Page 18**

# Jefferson-Pilot
# Life Insurance Company
(the "Company")

**Service Office:** 100 North Greene Street
P.O. Box 21008
Greensboro, North Carolina 27420

This policy is a legal contract between You and Us. It is important that You read Your contract carefully.

We will pay the proceeds of this policy to the beneficiary upon receipt of due proof that the death of the Insured occurred while this policy was in force. This payment and all other rights, options and benefits will be subject to the terms of this policy.

**Right to Cancel Policy** Within 20 days after You receive this policy, You may have it cancelled by returning it to Us, to the agent from whom You bought it, or to any of Our agents. The return of this policy will void it from the beginning and We will refund any premiums paid.

*[signatures]*

Chief Executive Officer                     Secretary

| Table of Contents | Page No. |
|---|---|
| Benefits and Premiums | 3 |
| Coverage Protection Guarantee Provisions | 11 |
| Definitions | 5 |
| General Provisions | 6 |
| Insurance Coverage Provisions | 8 |
| Death Benefit | |
| Death Benefit Qualification Test | |
| Death Benefit Options | |
| Continuation of Policy After Age 100 | |
| Nonforfeiture Provisions | 9 |
| Surrender and Surrender Value | |
| Partial Surrender | |
| Owner and Beneficiary | 5 |
| Policy Loans | 12 |
| Policy Specifications | 3 |
| Premium Provisions | 7 |
| Grace Period | |
| Reinstatement | |
| Settlement Options | 12 |
| Summary of Policy Features | 2 |
| Table of Maximum Insurance Rates | 13 |

Riders providing supplemental benefits or policy changes, if any, and a copy of the application follow Page 14.

Insured:        GORDON R A FISHMAN

Policy Number: JF5524737

**FLEXIBLE PREMIUM
ADJUSTABLE LIFE INSURANCE POLICY WITH COVERAGE PROTECTION GUARANTEE**

**Proceeds payable at death. Adjustable Death Benefit. Flexible premiums payable to Insured's Attained Age 100. Policy values may increase or decrease by declared interest and risk rates. Non-participating – No Dividends.**

**EXHIBIT 1    Page 19**

**(This Page Left Blank Intentionally)**

**EXHIBIT 1    Page 20**

## Summary of Policy Features

This Summary is an overview of the important features and operations of Your policy. It is meant to give You a basic understanding of Your policy. Specific details regarding these features are only provided in the policy provisions and cannot be fully described in a summary. **This summary is not a substitute for reading the entire policy carefully.**

**Flexible Premium Adjustable Life Insurance** – This title is Our generic name for universal life insurance. "Flexible premium" means that You may pay premiums by any method agreeable with Us, at any time prior to the Insured's Attained Age 100 and in any amount subject to certain limitations. "Adjustable life insurance" means that You, with Our agreement, can change the death benefit to meet Your changing needs.

**Coverage Duration** – Your policy will remain in effect if You have a positive Cash Surrender Value or if the Coverage Protection Guarantee test is met.

**Policy Value** – The Policy Value is a key component of Your policy. It's where Your premiums go and where We assess Our charges for providing coverage. We apply a charge to each premium You pay, then add the balance to the Policy Value. We deduct the cost of providing the coverage (the cost of insurance) plus the cost of any additional benefits and/or riders and administrative expense charges from this value each month as a "monthly deduction". We then credit interest to the difference.

Simply put - premium and interest additions increase the Policy Value, Our charges decrease the Policy Value. If additions exceed deductions, Your Policy Value increases; if deductions exceed additions, Your Policy Value decreases. If the Policy Value, less surrender charge, less Debt (Cash Surrender Value) becomes so small that We cannot take an entire monthly deduction, Your policy may terminate; see, however, the Coverage Protection Guarantee below and the policy provisions describing the Grace Period.

**Coverage Protection Guarantee** – Your policy provides an important Coverage Protection Guarantee which can ensure that Your coverage will continue even if Your Cash Surrender Values are insufficient to cover the monthly deductions.

How does the Coverage Protection Guarantee work? The guarantee references an "alternate" policy value calculated in the same manner as the actual Policy Value but utilizing different charges (cost of insurance, cost of additional benefits and/or riders, administrative expense charges) and interest rates. All charges used in this alternate policy value calculation are guaranteed not to increase and all interest rates used in this alternate policy value calculation are guaranteed not to decrease. The alternate policy value is not used in determining the actual Policy Value, it is

simply a reference value used to determine whether the Coverage Protection Guarantee is in effect.

Note that the length of time the Coverage Protection Guarantee can continue Your policy in force may vary based upon the following factors:

- changes in premium frequency, timing or amount;
- policy changes such as loans, partial surrenders, changes in the death benefit and addition of riders.

In addition, if You have allowed the policy to lapse longer than 90 days, the guarantee is permanently lost.

We will provide You with an annual notification of the status of Your Coverage Protection Guarantee, which You should review carefully.

**Variables** - Many variables affect Your policy's performance. The better You understand these variables, the better You will be able to monitor Your policy's performance and take advantage of its flexibility:

- **Credited Interest Rates.** Interest is the most volatile component of Your policy. Do not assume that interest rates will remain constant for any extended period of time. We can change interest rates at any time based on certain contractually identified factors subject to a minimum rate.

- **Monthly Cost of Insurance and Expense Charges.** These charges are assessed against Your Policy Value to cover the company's cost of insurance and other expenses. These charges will be detailed in Your annual statement of account. We can change these charges based on certain contractually identified factors subject to the maximum guaranteed factors shown in Your policy.

- **Premium Payments.** Payment of premiums, even planned premiums, may not result in Policy Value performance as originally expected. Premium payments are only one variable affecting the performance of Your Policy Value. Your policy could perform better or worse than expected due to the effect of changes in interest rates, monthly cost of insurance and expense charges, as well as the timing, amount and frequency of Your premium payments. Obviously, if You choose to pay lower premiums or skip premium payments, such actions will have the impact of slowing Your Policy Value growth and increasing the potential that Your policy will lapse.

**Monitoring Your Policy's Performance** - We will send You an annual Statement of Account to help You monitor

EXHIBIT 1   Page 21

F5014

## Summary of Policy Features (Cont'd)

Your policy's performance and compare it to Your objectives when You purchased Your policy. Begin by verifying that Your planned premiums will accomplish Your insurance objective. Ask Your life insurance agent to explain anything You do not understand. You may need to adjust Your premiums to achieve Your insurance objectives. You may request a projection of future death benefits and Policy Values from Us at any time. We are also available to answer Your questions and assist You in making changes to Your policy.

**EXHIBIT 1    Page 22**

SCHEDULE OF BENEFITS AND PREMIUMS - POLICY NUMBER   JF-5524737

| FORM NUMBER | BENEFIT | | ISSUE DATE | MONTHLY DEDUCTION | RATE CLASS | YEARS PAYABLE |
|---|---|---|---|---|---|---|
| UL5004 | INITIAL SPECIFIED AMOUNT | 10,000,000 | SEP 9, 2005 | SEE PAGE 9 | PREF NON-TOBACCO USER | 23 |

POLICY SPECIFICATIONS
----------------------

NOTE:   THIS POLICY PROVIDES LIFE INSURANCE COVERAGE TO THE DEATH OF THE INSURED IF SUFFICIENT PREMIUMS ARE PAID. THE DURATION OF COVERAGE WILL DEPEND ON THE AMOUNT, TIMING AND FREQUENCY OF PREMIUM PAYMENTS, THE INTEREST CREDITED AND ANY LOANS OR WITHDRAWALS AND THE COST OF ADDITIONAL BENEFITS. THE PLANNED PREMIUM MAY NEED TO BE INCREASED TO KEEP THIS POLICY AND THE COVERAGE IN FORCE.

OWNER                   GORDON R A FISHMAN IRREVOCABLE LIFE TRUST, DATED AUGUST 17, 2005, HARVEY SCHWITZER, TRUSTEE

BENEFICIARY             AS STATED IN APPLICATION UNLESS LATER CHANGED.

INSURED    GORDON R A FISHMAN

POLICY NUMBER   JF-5524737                POLICY DATE    SEP 09, 2005

AGE AND SEX    77 MALE

SPECIFIED AMOUNT       $10,000,000

DEATH BENEFIT OPTION I

PLAN OF INSURANCE       FLEXIBLE PREMIUM
                        ADJUSTABLE LIFE
                                                EXHIBIT 1   Page 23

F5104-A                            PAGE 3

INSURED   GORDON R A FISHMAN

POLICY NUMBER   JF-5524737

FORM NUMBER   UL5004

PLANNED PREMIUM          $425,226.00   ANNUAL
                         PLUS ADDITIONAL INITIAL PREMIUM OF $274,774

MINIMUM SPECIFIED AMOUNT          $100,000.00

FACTORS USED IN THE CALCULATION OF POLICY VALUES:

LOAD BASIS AMOUNT      $462,100.00

MONTHLY ADMINISTRATIVE CHARGES:

1. $14.00 FOR POLICY MONTHS 1-12
   $4.00 FOR POLICY MONTHS 13 AND LATER

2. 2.0% OF LOAD BASIS AMOUNT FOR POLICY MONTHS 1-12 AND IN MONTHS 1-12
   FOLLOWING THE EFFECTIVE DATE OF AN INCREASE IN SPECIFIED AMOUNT; AND
   1.0% OF LOAD BASIS AMOUNT FOR POLICY MONTHS 13-24 AND IN MONTHS 13-24
   FOLLOWING THE EFFECTIVE DATE OF AN INCREASE IN SPECIFIED AMOUNT.

   THE LOAD BASIS AMOUNT SHOWN ABOVE IS BASED ON THE INITIAL SPECIFIED
   AMOUNT. THE REVISED LOAD BASIS AMOUNT APPLICABLE TO AN INCREASE WILL BE
   SHOWN ON A SUPPLEMENTAL POLICY SPECIFICATIONS PAGE. A DECREASE IN
   SPECIFIED AMOUNT WILL HAVE NO EFFECT ON THIS ADMINISTRATIVE CHARGE.

3. ADMINISTRATIVE CHARGE PER $1,000 OF SPECIFIED AMOUNT
   $0.06 FOR POLICY MONTHS 1-12 AND IN MONTHS 1-12 FOLLOWING THE
   EFFECTIVE DATE OF AN INCREASE. THE CHARGE FOR AN INCREASE SHALL BE PER
   $1,000 OF SPECIFIED AMOUNT OF THE INCREASE.

GUARANTEED NET PREMIUM FACTOR
   93% OF GROSS PREMIUM PAID IN ALL POLICY YEARS

MORTALITY TABLE USED TO CALCULATE MINIMUM CASH SURRENDER VALUES –
   1980 CSO  MALE OR FEMALE  NONSMOKER OR SMOKER

INTEREST RATE USED TO CALCULATE MINIMUM CASH SURRENDER VALUES - 3.00%

PLAN OF INSURANCE      FLEXIBLE PREMIUM
                       ADJUSTABLE LIFE

F5104-A                          PAGE 4A          EXHIBIT 1   Page 24

INSURED   GORDON R A FISHMAN

POLICY NUMBER   JF-5524737

FORM NUMBER   UL5004

TABLE OF SURRENDER CHARGES PER $1,000 OF INITIAL SPECIFIED AMOUNT
--------------------------------------------------------------------

| POLICY MONTH | SURRENDER CHARGE |
|---|---|
| 1- 12 | 42.70 |
| 13- 24 | 40.58 |
| 25- 36 | 38.52 |
| 37- 48 | 36.52 |
| 49- 60 | 34.58 |
| 61- 72 | 29.44 |
| 73- 84 | 24.75 |
| 85- 96 | 20.49 |
| 97-108 | 16.62 |
| 109-120 | 13.11 |
| 121-132 | 9.92 |
| 133-144 | 7.03 |
| 145-156 | 4.42 |
| 157-168 | 2.07 |
| 169-180 | 0.96 |
| 181 & LATER | 0.00 |

THE SURRENDER CHARGES ABOVE ARE BASED ON THE INITIAL SPECIFIED AMOUNT.
ADDITIONAL SURRENDER CHARGES RELATED TO ANY INCREASE IN SPECIFIED AMOUNT
WILL BEGIN FROM THE EFFECTIVE DATE OF THE INCREASE IN COVERAGE.
THESE ADDITIONAL SURRENDER CHARGES WILL BE SHOWN ON A SUPPLEMENTAL
POLICY SPECIFICATIONS PAGE.

POLICY LOAN INTEREST RATE 4.00%

POLICY LOAN INTEREST RATE ON PREFERRED LOANS 3.00%

PARTIAL SURRENDER MINIMUM AMOUNT $500.00

PARTIAL SURRENDER FEE $50.00

MAXIMUM ATTAINED AGE FOR AN INCREASE: 85

PLAN OF INSURANCE   FLEXIBLE PREMIUM
                    ADJUSTABLE LIFE

EXHIBIT 1   Page 25

F5104-A                          PAGE 4B

INSURED    GORDON R A FISHMAN

POLICY NUMBER    JF-5524737

FORM NUMBER    UL5004

DEATH BENEFIT QUALIFICATION TEST - GUIDELINE PREMIUM TEST

TABLE OF CORRIDOR FACTORS
----------------------------

| ATTAINED AGE | CORRIDOR FACTOR |
|---|---|
| 77 | 1.05 |
| 78 | 1.05 |
| 79 | 1.05 |
| 80 | 1.05 |
| 81 | 1.05 |
| 82 | 1.05 |
| 83 | 1.05 |
| 84 | 1.05 |
| 85 | 1.05 |
| 86 | 1.05 |
| 87 | 1.05 |
| 88 | 1.05 |
| 89 | 1.05 |
| 90 | 1.05 |
| 91 | 1.04 |
| 92 | 1.03 |
| 93 | 1.02 |
| 94 | 1.01 |
| 95 AND OVER | 1.00 |

PLAN OF INSURANCE    FLEXIBLE PREMIUM ADJUSTABLE LIFE

EXHIBIT 1    Page 26

F5104-A                    PAGE 4C

INSURED     GORDON R A FISHMAN
POLICY NUMBER     JF-5524737
FORM NUMBER       UL5004

FACTORS USED IN THE CALCULATION OF COVERAGE PROTECTION GUARANTEE:

CPA I INTEREST RATES: 5.90% FOR POLICY YEARS 1-10; 5.30% FOR POLICY YEARS
11-30 AND 4.30% FOR POLICY YEARS 31 AND THEREAFTER

CPA II INTEREST RATES: 5.60% FOR POLICY YEARS 1-10; 5.10% FOR POLICY YEARS
11-30 AND 4.20% FOR POLICY YEARS 31 AND THEREAFTER

CPA III INTEREST RATE: 3.50% FOR ALL POLICY YEARS

COVERAGE PROTECTION GUARANTEE NET PREMIUM FACTOR
    90.00% OF GROSS PREMIUM PAID IN POLICY YEAR 1
    100.00% OF GROSS PREMIUM PAID IN POLICY YEARS 2 AND AFTER

COVERAGE PROTECTION GUARANTEE REINSTATEMENT PROVISIONS PERIOD: WITHIN 90 DAYS
AFTER THE DATE OF TERMINATION AND PRIOR TO THE INSURED'S ATTAINED AGE 100.

PLAN OF INSURANCE     FLEXIBLE PREMIUM
                      ADJUSTABLE LIFE

EXHIBIT 1   Page 27

F5104-A                          PAGE 4D

INSURED    GORDON R A FISHMAN

POLICY NUMBER    JF-5524737

FORM NUMBER    UL5004

## COVERAGE PROTECTION GUARANTEE
### COST OF INSURANCE RATES PER 1,000 OF SPECIFIED AMOUNT

| POLICY YEAR | TABLE A MONTHLY RATE | TABLE B MONTHLY RATE |
|---|---|---|
| 1 | 0.83102 | 0.83102 |
| 2 | 0.98610 | 1.66934 |
| 3 | 1.13936 | 2.35106 |
| 4 | 1.35821 | 3.32459 |
| 5 | 1.48654 | 3.89541 |
| 6 | 1.76750 | 5.41702 |
| 7 | 2.09411 | 7.14169 |
| 8 | 2.30252 | 7.93975 |
| 9 | 3.60566 | 12.43333 |
| 10 | 3.93433 | 13.56666 |
| 11 | 4.27242 | 14.73250 |
| 12 | 4.61317 | 15.90750 |
| 13 | 4.96117 | 17.10750 |
| 14 | 5.32125 | 18.34916 |
| 15 | 5.69946 | 19.65333 |
| 16 | 6.10812 | 21.06250 |
| 17 | 6.56439 | 22.63583 |
| 18 | 7.14487 | 24.63750 |
| 19 | 7.97403 | 27.49666 |
| 20 | 9.29329 | 32.04583 |
| 21 | 11.60483 | 40.01666 |
| 22 | 15.90118 | 54.83166 |
| 23 | 24.16666 | 83.33333 |

PLAN OF INSURANCE    FLEXIBLE PREMIUM
ADJUSTABLE LIFE

F5104-A                    PAGE 4E

EXHIBIT 1    Page 28

INSURED    GORDON R A FISHMAN
POLICY NUMBER    JF-5524737
FORM NUMBER    UL5004

COVERAGE PROTECTION GUARANTEE
TABLE OF ADMINISTRATIVE CHARGES

| POLICY YEAR | MONTHLY RATE |
|---|---|
| 1 | 20355.76 |
| 2 | 17320.19 |
| 3 | 15787.64 |
| 4 | 13599.10 |
| 5 | 12315.85 |
| 6 | 6788.11 |
| 7 | 803.86 |
| 8 | 10.00 |
| 9 | 10.00 |
| 10 | 10.00 |
| 11 | 10.00 |
| 12 | 10.00 |
| 13 | 10.00 |
| 14 | 10.00 |
| 15 | 10.00 |
| 16 | 10.00 |
| 17 | 10.00 |
| 18 | 10.00 |
| 19 | 10.00 |
| 20 | 10.00 |
| 21 | 10.00 |
| 22 | 10.00 |
| 23 | 10.00 |

PLAN OF INSURANCE    FLEXIBLE PREMIUM
ADJUSTABLE LIFE

EXHIBIT 1    Page 29

F5104-A                          PAGE 4F

**(This Page Left Blank Intentionally)**

EXHIBIT 1    Page 30

## Definitions

Where the terms below appear in this policy, We define them as follows:

**Age**   The Insured's age, nearest birthday, on the Policy Date.

**Attained Age**   The Insured's age as measured from the Policy Date plus the number of completed policy years.

**Cash Surrender Value**   The Policy Value as of the date of surrender less the charge, if any, for full surrender, and less any Debt.

**Cash Value**   Policy Value less any surrender charge.

**Coverage Protection Guarantee**   A policy feature that provides that the policy will remain in effect to the death of the Insured subject to the requirements as stipulated in the Coverage Protection Guarantee Provisions on Page 11.

**Debt**   The principal of a policy loan together with interest due.

**Insured**   The person whose life is insured under this policy.

**Irrevocable Beneficiary**   A beneficiary, named by You as irrevocable, whose written consent is necessary for You to exercise any right specified in this policy.

**Issue Date**   The date the policy is issued at Our Service Office as stated on Page 3.

**Monthly Anniversary Day**   The same day in each month as the Policy Date.

**Nonparticipating**   No dividends will be paid on this policy.

**Notice, Election, Request**   Writings satisfactory to Us that have been received at Our Service Office. We will not be held responsible for any payment or other action We have taken before Your writings are recorded at Our Service Office.

**Policy Date**   The date We use to determine policy anniversaries and monetary values. If a requested Policy Date should fall on the 29th, 30th or 31st of a month, the Policy Date will be the 28th of such month.

**Policy Value**   As defined in the Nonforfeiture Provisions on Page 9.

**Proceeds**   The money We will pay as a death benefit or if the policy is surrendered for its Cash Surrender Value.

1. As a Death Claim   The proceeds will be the amount of insurance as described on page 8.

2. Upon Surrender   The proceeds will be the Cash Surrender Value.

**Service Office**   Our principal place of business as shown on Page 1.

**"We", "Our", "Us"**   The Company.

**"You", "Your"**   The Owner of this policy.

## Owner and Beneficiary

**Owner**   The Owner is shown on page 3 or in a rider attached to this policy. While the Insured is alive, the Owner may exercise every right and option and receive every benefit provided by this policy. These rights, however, are subject to the written consent of any Irrevocable Beneficiary.

**Beneficiary**   The beneficiary is as stated in the application unless later changed.

**Change of Owner or Beneficiary**   While the Insured is alive, the Owner or beneficiary may be changed. Any change will take effect as of the date the request is signed. The Insured need not be living when the requested change is recorded at Our Service Office, however the requested change must be delivered to Us prior to the death of the Insured.

**Death of the Owner or Beneficiary**   If an Owner other than the Insured dies while the Insured is living, all rights and options of the Owner will belong to the Owner's executors or administrators or to the Owner's successor in interest (if the Owner is a non-natural person) unless otherwise provided. The interest of any beneficiary, including any Irrevocable Beneficiary, who dies before the Insured, will belong to the Owner unless otherwise provided.

**EXHIBIT 1   Page 31**

F5204

Policy Number   IF5524737

## General Provisions

**The Contract**   This policy is issued in consideration of the application and payment of the initial premium. This policy, the attached copy of the application and/or endorsements, and any attached supplemental applications and riders form the entire contract. All statements made by or for the Insured are, in the absence of fraud, considered to be representations and not warranties. We will not use any statement by or for the Insured to void this policy or to deny a claim unless it is contained in an application.

**Policy Changes**   Only an authorized officer of the Company can change the terms or waive provisions of this policy. A change must be in writing.

**Incontestability**   We will not contest this policy after it has been in force during the Insured's lifetime for 2 years from the Issue Date. An increase in the Specified Amount will not be contested after it has been in force during the Insured's lifetime for 2 years from its effective date.

**Suicide**   If the Insured, while sane or insane, commits suicide within 2 years from the Issue Date, the amount payable will be no more than the sum of the premiums paid less any Debt and any partial surrenders. If the Insured, while sane or insane, commits suicide within 2 years from the effective date of an increase in the Specified Amount, the amount payable under such increase will be the sum of the monthly deductions for such increase. The amount payable under this provision will be paid to the Beneficiary. Any amount payable will first be used to pay the interest of anyone to whom the policy has been assigned.

**Assignment**   Only You have the right to assign this policy. We are not bound by an assignment unless it has been recorded at Our Service Office. We are not responsible for the validity or effect of any assignment.

**Misstatement of Age or Sex**   If the age or sex of the Insured has been misstated, the amount of death benefit will be adjusted to the amount which would have been provided by the most recent cost of insurance deduction at the true age and sex. The Policy Value will not be affected.

**Compliance with the Internal Revenue Code**   This policy is intended to qualify as life insurance under the Internal Revenue Code. The death benefit provided by this policy is intended to qualify for the Federal income tax exclusion. If at any time the premium paid under this policy exceeds the amount allowable for such qualification, We will refund the premium to You with interest within sixty days after the end of the policy year in which the premium was received. If, for any reason, We do not refund the excess premium within sixty days after the end of such policy year, the excess premium will be held in a separate deposit fund and credited with interest until refunded to You. The interest rate used on any refund or credited to the separate deposit fund created by this provision will be the current rate of interest We are paying on this policy. We also reserve the right to refuse to make any change in the Specified Amount or the Death Benefit Option or any other change if such change would cause this policy to fail to qualify as life insurance under the Internal Revenue Code.

**Modified Endowment**   This policy will be allowed to become a modified endowment contract under the Internal Revenue Code only with Your consent. Otherwise, if at any time the premiums paid under the policy exceed the limit for avoiding modified endowment contract status, the excess premium will be refunded to You with interest within sixty days after the end of the policy year in which the premium was received. If, for any reason, We do not refund the excess premium within sixty days after the end of such policy year, the excess premium will be held in a separate deposit fund and credited with interest until refunded to You. The interest rate used on any refund or credited to the separate deposit fund created by this provision will be the current rate of interest We are paying on this policy.

**Annual Report**   We will provide an Annual Report to You. This report will show the activity of the policy for the past policy year. It will list premiums paid, expenses charged, monthly deductions, interest credited, and partial surrenders. It will show the then current death benefit, Policy Values and Debt, as well as any other information required by state law and regulation. By comparing the actual policy values to the projection of values received when this policy was purchased You can determine whether this policy is performing as planned.

Upon request, We will provide a projection of illustrative future death benefits and Policy Values. The first illustration in any policy year will be furnished free of charge. If You request more than one illustration in a policy year We reserve the right to apply a charge for this service.

**Settlement**   Payment or settlement under this policy will be made at Our Service Office in a lump sum payment unless You elect to receive proceeds under a Settlement Option as stated in the Settlement Options provision. At the time of settlement, any Debt will be deducted. At the time of settlement, We reserve the right to require surrender of this policy.

**Deferment**   We may defer making a partial surrender or policy loan up to 6 months after We receive Your request. however a partial surrender or loan for payment of premiums to Us will not be deferred.

**EXHIBIT 1    Page 32**

Page 6

## Premium Provisions

**Premium Payment**    The initial premium is due on the Policy Date and is payable on or before delivery of this policy. Thereafter, premiums may be paid at any time and in any amount, subject to the following conditions, unless otherwise agreed to in writing by Us, however sufficient premium must be paid to keep this policy in force.

The amount of each premium must be at least $25.

We reserve the right to limit the amount of premiums that We will accept in any policy year to an amount equal to the guideline level premium determined for Your policy under the Internal Revenue Code unless a larger amount is necessary to prevent the termination of the policy on or before the end of the policy year.

Your premiums are payable in United States currency. Premium payments, after the first, can be made as follows:

1.    through prearranged withdrawals by contacting the Service Office;

2.    sent to any premium address designated by Us;

3.    made to Our authorized agent. A receipt signed by one of Our Officers will be provided upon request.

**Grace Period**    If on a Monthly Anniversary Day the Cash Surrender Value is less than the monthly deduction due, Your policy will enter the grace period unless the Coverage Protection Guarantee is in effect. A grace period of 60 days from the date that the policy enters the grace period will be allowed for the payment of the minimum amount needed to continue the policy. If the Coverage Protection Guarantee is in effect, the grace period will not begin and this policy will not be subject to termination under this provision.

We will notify You and any assignee of the minimum amount due at least 30 days before the end of the grace period. If the amount specified is not paid within the grace period, this policy will terminate without value at the end of such period. If the Insured dies within the grace period, the amount needed to continue this policy to the end of the policy month of death will be deducted from the amount otherwise payable.

**Reinstatement**    Application to reinstate this policy may be made within 5 years after the date of termination and prior to the Insured's Attained Age 100 provided this policy has not been surrendered for its Cash Surrender Value. Limitations exist for reinstatement of the Coverage Protection Guarantee Provisions as stated in this provision. You may apply to reinstate this policy even if the Coverage Protection Guarantee Provisions can no longer be reinstated.

In addition to the application, reinstatement will require all of the following:

1.    You must furnish evidence of insurability satisfactory to Us;

2.    You must pay an amount that results in a Cash Surrender Value on the date of reinstatement that is sufficient to keep this policy in force for at least 2 months;

3.    You must pay or reinstate any Debt.

The Cash Surrender Value on the date of reinstatement will equal:

(a)    The Policy Value at the time of policy termination; plus

(b)    Net Premiums credited at the time of reinstatement; less

(c)    The surrender charge at the time of reinstatement; less

(d)    Any Debt at the time of reinstatement.

The surrender charge will be based on the duration from the original Policy Date as though the policy had never lapsed.

Reinstatement will be effective on the date We approve the application unless another date acceptable to Us is requested. In addition to the required payment to keep the policy in force as stated in 2. above, We recommend that You resume Your modal premium payments in order to provide coverage beyond the initial period following the date of reinstatement.

We will not contest this policy for misrepresentations made in the application for reinstatement after this policy has been in force during the lifetime of the Insured for 2 years from the date of the last reinstatement.

The Coverage Protection Guarantee Provisions may be reinstated at the time of policy reinstatement if application for reinstatement is received during the Coverage Protection Guarantee Provisions Reinstatement Period as shown on page 4. In order to reinstate the Coverage Protection Guarantee Provisions We will require payment at the time of policy reinstatement of the lesser of:

(i)    the amount stipulated in 2. above; and

(ii)    the amount required to reinstate the Coverage Protection Guarantee Provisions.

You will be advised at the time of reinstatement of the amount required. In order for the guarantee described in the Coverage Protection Guarantee Provisions to become effective, additional payment may be required. Your request for reinstatement of the Coverage Protection Guarantee Provisions must be received during the specified time period.

**Premium Refund at Death**    Any premium paid after the beginning of the policy month of death will be refunded as part of the proceeds, unless You request otherwise prior to such payment.

**EXHIBIT 1    Page 33**

F5304

Policy Number    JF5524737

## Insurance Coverage Provisions

**Death Benefit**   The death benefit of this policy is the larger of:

(a) The death benefit under the Death Benefit Option in effect; or

(b) The Policy Value at the beginning of the policy month of death times the Corridor Factor shown in the table on page 4.

The death benefit will be reduced by any Debt on the date of death. The Policy Value at the beginning of the policy month of death used in calculating the death benefit is after subtracting all parts of the monthly deduction for the policy month except for the cost of insurance.

**Death Benefit Qualification Test**   This policy is intended to qualify as life insurance under the Internal Revenue Code.   The death benefit provided by this policy is intended to qualify for the Federal income tax exclusion. Two methods of qualifying as life insurance are the Cash Value Accumulation Test and the Guideline Premium Test, as defined in Internal Revenue Code Section 7702. The Death Benefit Qualification Test for this policy is shown on page 4 and cannot be changed.   Unless You elected otherwise, the Death Benefit Qualification Test is the Guideline Premium Test.

**Death Benefit Options**   There are three death benefit options as described in this provision. The death benefit option for this policy is shown on page 3.

- **Option I**   The death benefit is the Specified Amount on the date of death.

- **Option II**   The death benefit is the Specified Amount on the date of death plus the Policy Value at the beginning of the policy month of death.

- **Option III**   The death benefit is the Specified Amount on the date of death plus the total of the premiums paid less the total of any partial surrenders taken to the date of death. If the total of the partial surrenders is greater than the total of premiums paid, then the death benefit will be less than the Specified Amount.

If this policy is in force at the Attained Age 100 of the Insured, the Specified Amount and Death Benefit Option will change automatically as described in the following provision.

**Continuation of Policy After Age 100**   If this policy is in force at the Attained Age 100 of the Insured (but not in the grace period) the following will occur:

(a) Your policy will continue in force for the lifetime of the Insured unless You surrender this policy;

(b) the Death Benefit Option in effect may not be changed;

(c) no further premium payments may be made;

(d) no further monthly deductions will be taken;

(e) Policy loans and partial surrenders can continue to be taken. Preferred loan rates will apply as stated in the Policy Loans provision;

(f) All supplemental riders and benefits will terminate.

If this policy is in the grace period at Attained Age 100 You will need to pay the minimum amount required to remove this policy from the grace period in order to guarantee continuation of this policy beyond Attained Age 100.

**Changes in Insurance Coverage**   Upon request, the insurance coverage may be changed at any time after the first policy year as described in this provision.

- **Increases In Specified Amount**   The Maximum Attained Age for an increase in Specified Amount is as shown on Page 4. If a change would result in an increase in the amount payable at death, such change will be subject to satisfactory evidence of insurability.

- **Decreases In Specified Amount**   A decrease in Specified Amount may be made prior to the Attained Age 100 of the Insured. The Specified Amount may not be decreased below the minimum shown on page 4. A decrease in the Specified Amount will apply first against insurance with the most recent effective date, with the Initial Specified Amount being last to be decreased. A surrender charge will be applied as specified in the Surrender Charges provision.

- **Changes in Death Benefit Option**   Prior to Attained Age 100 You may request a change in death benefit option to Option I or Option II. Changes to Option III are not permitted. If a change would result in an increase in the amount payable at death, such change will be subject to satisfactory evidence of insurability.

Rating class changes may occur at any time after the first policy year and prior to Attained Age 100. Changes in insurance coverage will be effective on the Monthly Anniversary Day on or next following the date of approval by Us of the request for the change, unless another date acceptable to Us is requested.

**Policy Changes and the Coverage Protection Guarantee**   Rating class changes that result in a more favorable mortality rating will require a change to Table A, B and the Table of Coverage Protection Guarantee Administrative Charges used in determining the Coverage Protection Guarantee. A new specifications page will be sent to You after such change. Decreases in Specified Amount for the policy or any attached rider and death benefit option changes will not require a change to Table A, B or the Table of Coverage Protection Guarantee Administrative Charges. A charge will be applied in determining the Coverage Protection Guarantee following an increase in Specified Amount as stipulated in the Coverage Protection Guarantee provisions.

**EXHIBIT 1   Page 34**

# Nonforfeiture Provisions

**Policy Value**   The Policy Value on the Policy Date will be equal to all net premiums paid for this policy. The Policy Value of this policy is then determined on each Monthly Anniversary Day by accumulating with interest the Policy Value for the prior month increased by net premiums credited and decreased by monthly deductions and by the reduction in Policy Value caused by any partial surrender since the preceding Monthly Anniversary Day.

On any day other than a Monthly Anniversary Day, the Policy Value will be the Policy Value as of the preceding Monthly Anniversary Day minus both the monthly deduction for the current policy month and the reduction in Policy Value caused by any partial surrender since the preceding Monthly Anniversary Day.

In addition, if the surrender is processed as of the preceding Monthly Anniversary Day We will refund any premium received since the preceding Monthly Anniversary Day.

**Net Premium**   Each net premium will be computed by multiplying each gross premium by the guaranteed net premium factor shown on page 4. A higher net premium factor may be applied as determined by Us.

**Interest Rate**   The interest rate used in the calculation of the Policy Value will never be less than the Interest Rate Used to Calculate Minimum Cash Surrender Values as shown on page 4. Interest in excess of the guaranteed rate may be applied as determined by Us. Such interest is referred to in this policy as excess interest. No excess interest will be credited on any Policy Value held as security for a policy loan.

Interest will begin to accumulate as of the date the Net Premium is credited.

**Monthly Deduction**   The monthly deduction for a policy month will be computed as (1) plus (2) where

(1)   is the cost of insurance and the cost of any additional benefits provided by rider for the policy month.

(2)   is the sum of all administrative charges for the policy and any attached riders shown on page 4 as being due for the policy month.

If there is an increase in the Specified Amount, additional charges will be in effect for the increase as shown on page 4. A new specifications page will be sent to You following an increase in Specified Amount.

**Cost of Insurance**   The cost of insurance is determined on a monthly basis as the cost of insurance rate for the month multiplied by the net amount at risk for the month. The net amount at risk for the Policy Value calculation is computed as (1) minus (2) where

(1)   is the death benefit for the month before reduction for any Debt, discounted to the beginning of the month at the guaranteed interest rate.

(2)   is the Policy Value at the beginning of the month.

For months in which Death Benefit Option I is in effect, for the purpose of allocating the cost of insurance between different parts of the Specified Amount, the Policy Value will be considered as part of the Initial Specified Amount. If such value exceeds the Initial Specified Amount, any excess will be considered part of the earliest addition to the Specified Amount. This allocation will continue in order of all additions to the Specified Amount until all value is allocated.

**Cost of Insurance Rates**   The monthly cost of insurance rates are determined by Us. The table of guaranteed maximum rates is shown on page 13. We may use rates lower than these guaranteed maximum rates. We will never use higher rates. The guaranteed maximum rates are based on the mortality table shown on page 4.

**Continuation of Insurance**   This policy and all riders will continue in force according to the terms as long as either the Cash Surrender Value is sufficient to cover the monthly deduction or the total of the Coverage Protection Accounts equals or exceeds Debt. If neither amount is sufficient, the policy will terminate according to the grace period provision. If premiums are discontinued on any date, the Cash Surrender Value on that date will be used to provide insurance under this provision.

**Basis of Values**   Minimum Policy Values are based on the mortality assumptions and interest rates shown on page 4. The values for this policy are at least equal to the minimum required by law. If required, a detailed statement of the method used to determine policy values and reserves has been filed with the states in which this policy is delivered.

**Changes in Rates**   At Our sole discretion, We may change the monthly cost of insurance rates or excess interest rate at any time. We will base any change on Our future expectations as to investment earnings, mortality, persistency, expenses and taxes. We will not make any change in order to distribute past gains or recoup prior losses. Any change in the monthly cost of insurance rates will apply to all insureds with the same combination of the following: Attained Age, sex, length of time the policy has been in force and rate class. Changes in rates will affect the Policy Value. Changes in rates may also affect length of insurance coverage.

**EXHIBIT 1    Page 35**

F5404

Policy Number   JF5524737

# Nonforfeiture Provisions (Continued)

**Surrender and Surrender Value**   Upon request, You may surrender this policy for its Cash Surrender Value. Surrender within 31 days after a policy anniversary date will be treated as a surrender on that date, otherwise the surrender request will be effective on the Monthly Anniversary Day nearest the date We receive Your request.

**Partial Surrender**   Upon request, You may make a partial surrender of this policy. The partial surrender may be for any amount equal to or greater than the Partial Surrender Minimum Amount shown on page 4, not to exceed the Cash Surrender Value less $500.

When a partial surrender is made:

1. the Policy Value will be reduced by the amount of the partial surrender, plus the partial surrender fee shown on page 4;

2. the death benefit will be reduced by the amount at least equal to the reduction in Policy Value. Such a reduction may be produced without changing the Specified Amount. If not, We will reduce the Specified Amount so that the reduction in death benefit is equal to the reduction in value. If Death Benefit Option III is in effect and the total of the partial surrenders is greater than the premiums paid, then the Death Benefit will be less than the Specified Amount. A partial surrender cannot be allowed if it would reduce the Specified Amount below the minimum shown on page 4.

**Surrender Charges**   The charge for full surrender will be the amount shown on Page 4 for the number of completed policy months preceding surrender. There will be a partial charge if there is a decrease in the Specified Amount while there is a surrender charge in effect. If there is an increase in the Specified Amount, an additional surrender charge may be in effect for the increase. If there is an additional surrender charge in effect for an increase in Specified Amount, a new schedule of surrender charges will be provided after such increase.

Surrender charges are computed based on the number of thousands of Specified Amount. The partial charge for a decrease in Specified Amount will be based on the per thousand charge for the number of thousands of the decrease. A decrease in Specified Amount will apply first against insurance with the most recent effective date.

A new schedule of surrender charges will be provided after a change in such charges

EXHIBIT 1    Page 36

# Coverage Protection Guarantee Provisions

**Coverage Protection Guarantee** When the Coverage Protection Guarantee is in effect, this guarantee will provide that this policy will not enter the grace period because the policy's Cash Surrender Value is insufficient to cover the current monthly deductions as defined in the policy. The Coverage Protection Guarantee is in effect if the total of the Coverage Protection Accounts (herein referred to as "CPA I", "CPA II" and "CPA III" or the "account(s)") equals or exceeds Debt. The total of the Coverage Protection Accounts is a value equal to what the Policy Value would have been if calculated using the provisions described below. The Coverage Protection Accounts are used only for determining if the Coverage Protection Guarantee is in effect and are not used in calculating the actual Policy Value provided under this policy.

**Coverage Protection Value** The value of CPA I, CPA II and CPA III on the Policy Date will be equal to all net premiums allocated to each account. The value of each account is then determined on each Monthly Anniversary Day by accumulating with interest the value for the prior month increased by net premiums credited to that account and decreased by monthly deductions charged to that account and by the reduction in value caused by any partial surrender charged to that account since the preceding Monthly Anniversary Day. The total of the Coverage Protection Accounts may become less than zero.

On any day other than a Monthly Anniversary Day, the value of the account will be the value as of the preceding Monthly Anniversary Day minus both the monthly deduction for the current policy month charged to that account and the reduction in value caused by any partial surrender charged to that account since the preceding Monthly Anniversary Day.

**Net Premium** Each net premium will be computed by multiplying each gross premium by the Coverage Protection Guarantee Net Premium Factor on Page 4.

**Interest Rate** The interest rates are shown for each account on Page 4.

Interest will begin to accumulate as of the date the net premium is credited.

**Monthly Deduction** The monthly deduction for a policy month will be computed as (1) plus (2) where

(1) is the cost of insurance and the guaranteed maximum cost of any additional benefits provided by rider for the policy month.

(2) is the administrative charges. The Coverage Protection Guarantee Administrative Charges on Page 4 will be used, plus the maximum guaranteed administrative charges for any attached riders shown on page 4 as being due for the policy month.

This amount will include any Coverage Protection Guarantee charge in effect for an increase. Such charge will be based upon the Attained Age, sex, class of the Insured and the amount of the increase and will be shown on a supplemental specifications page that We will send to You.

**Cost of Insurance** The cost of insurance is determined on a monthly basis as the cost of insurance rate for the month multiplied by the net amount at risk for the month.

The net amount at risk for an account is computed as (1) minus (2) where

(1) is the death benefit for the month before reduction for any Debt, discounted to the beginning of the month at the CPA III guaranteed interest rate.

(2) is the total of all Coverage Protection Accounts at the beginning of the month.

**Cost of Insurance Rates** The monthly cost of insurance rates for use in the account calculations are shown in the Coverage Protection Guarantee Cost of Insurance Table A and B on Page 4. Table B will be applied if CPA III is not equal to zero otherwise Table A will be applied. The rate in the designated Table will apply to all accounts.

**Changes in Rates** The cost of insurance rates and the interest rates described in the Coverage Protection Guarantee provisions are fixed and guaranteed and not subject to change.

**Allocation Among Accounts** Net premiums, partial surrenders and monthly deductions will be allocated among the accounts by the following rules:

- **Net Premiums**
  a) If the initial premium, allocate to CPA I.
  b) If any other premium paid in the first policy year while the total of all accounts exceeds zero, allocate to CPA I.
  c) If any other premium paid while the total of the accounts is equal to or less than zero, allocate to CPA III.
  d) Otherwise, allocate to CPA II.

- **Partial Surrenders**
  a) Allocate to CPA I until it is reduced to zero.
  b) Allocate balance to CPA II until it is reduced to zero.
  c) Allocate remaining balance, if any, to CPA III.

- **Monthly Deductions**
  a) Allocate to CPA III until it is reduced to zero.
  b) Allocate balance to CPA II until it is reduced to zero.
  c) Allocate any additional balance to CPA I until it is reduced to zero.
  d) Allocate remaining balance to CPA III (in addition to any allocation to CPA III made in a) above).

**Disability Waiver Benefits** If a Disability Waiver of Monthly Deduction Benefit is attached to this policy and if You qualify for a Disability Waiver Benefit, monthly deductions due for the purposes of determining if the Coverage Protection Guarantee is in effect will be waived. If a Disability Waiver of Specified Premium Benefit is attached to this policy, any premium paid to this policy will be applied as premium for the purposes of determining if the Coverage Protection Guarantee is in effect.

**EXHIBIT 1    Page 37**

Policy Number    JF5524737

F5504

## Policy Loans

**When Available**   A loan may be obtained by request when this policy has a loan value. This policy will be the sole security for the loan.

**Amount Available**   The loan value at any time is the then current Policy Value if this policy were surrendered on the date of determination.

The maximum additional loan at any time is the loan value at that time less:

1. any existing loan;

2. accrued interest on any existing loan; and

3. interest on the total outstanding loan to the end of the policy year.

**Loan Interest**   Interest on a policy loan is due and payable on each policy anniversary. If You do not pay the interest when it is due, We will add the amount of interest to the loan. We will charge interest on this amount at the same interest being charged on the loan.

The effective annual policy loan interest rate is shown on page 4.

You must assign this policy to Us to the extent of the outstanding loan. If the Insured dies, We will deduct the outstanding loan from the death benefit before We pay the death benefit to the beneficiary.

**Loan Repayments**   You may repay all or part of a loan at any time while this policy is in force. Each partial repayment must be at least $25.

Every payment to Us on this policy will be considered a premium payment unless clearly marked for loan repayment or for payment of loan interest.

**Preferred Loan Amounts**   Beginning with the earlier of the Attained Age 100 of the Insured or the 21st policy year, all loan balances will be considered to be preferred loan amounts at the policy loan interest rate for preferred loans as shown on page 4.

**Maximum Loan Amount**   If the Debt at any time equals or exceeds the loan value, this policy will enter the grace period.

## Settlement Options

When the Insured dies while the policy is in force, policy proceeds may be paid in a lump sum or left with Us for payment under a settlement option that We make available.

The amount applied under an option for the benefit of any beneficiary must be at least $2,500. The amount of each payment under an option must be at least $50.

You may make, change or revoke an election at any time while the Insured is alive. Following the death of the Insured, the beneficiary may elect an option if You have not elected one or if proceeds are payable in one sum. A beneficiary may make a change in payment under a settlement option You elect only if You provided for it in Your election.

A change of beneficiary automatically cancels a previous election of a settlement option.

If this policy is assigned, the assignee's portion of proceeds will be paid in one sum. Any balance of proceeds may be applied under a settlement option.

To the extent allowed by law, all payments under the policy will be free from creditor claims or legal process.

**EXHIBIT 1   Page 38**

## Table of Guaranteed Maximum Cost of Insurance Rates - Male

**Basis of Calculation**
Non-Tobacco-User:   1980 CSO Male Nonsmoker Table
Tobacco-User:   1980 CSO Male Smoker Table

| Attained Age | Monthly Rate Per $1,000 | | Attained Age | Monthly Rate Per $1,000 | | Attained Age | Monthly Rate Per $1,000 | | Attained Age | Monthly Rate Per $1,000 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Non-Tobacco-User | Tobacco-User | | Non-Tobacco-User | Tobacco-User | | Non-Tobacco-User | Tobacco-User | | Non-Tobacco-User | Tobacco-User |
| 0 | .34912 | .34912 | 25 | .12677 | .17854 | 50 | .41026 | .80082 | 75 | 5.06274 | 7.31730 |
| 1 | .08922 | .08922 | 26 | .12343 | .17353 | 51 | .44713 | .87496 | 76 | 5.62182 | 7.99178 |
| 2 | .08254 | .08254 | 27 | .12176 | .17186 | 52 | .48989 | .95760 | 77 | 6.21387 | 8.68058 |
| 3 | .08171 | .08171 | 28 | .12009 | .17019 | 53 | .53771 | 1.05216 | 78 | 6.83324 | 9.37272 |
| 4 | .07921 | .07921 | 29 | .12009 | .17186 | 54 | .59311 | 1.15868 | 79 | 7.49616 | 10.08913 |
| 5 | .07504 | .07504 | 30 | .12009 | .17520 | 55 | .65444 | 1.27212 | 80 | 8.22966 | 10.86205 |
| 6 | .07170 | .07170 | 31 | .12260 | .18105 | 56 | .72255 | 1.39507 | 81 | 9.05445 | 11.71251 |
| 7 | .06670 | .06670 | 32 | .12510 | .18689 | 57 | .79493 | 1.52246 | 82 | 9.99708 | 12.66752 |
| 8 | .06336 | .06336 | 33 | .12928 | .19608 | 58 | .87327 | 1.65858 | 83 | 11.07332 | 13.73779 |
| 9 | .06169 | .06169 | 34 | .13428 | .20694 | 59 | .98182 | 1.80005 | 84 | 12.26712 | 14.88656 |
| 10 | .06086 | .06086 | 35 | .14096 | .21948 | 60 | 1.06061 | 1.95717 | 85 | 13.55591 | 16.07811 |
| 11 | .06419 | .06419 | 36 | .14764 | .23452 | 61 | 1.17052 | 2.13432 | 86 | 14.91787 | 17.27457 |
| 12 | .07087 | .07087 | 37 | .15683 | .25375 | 62 | 1.29585 | 2.33420 | 87 | 16.34412 | 18.45789 |
| 13 | .08254 | .08254 | 38 | .16685 | .27549 | 63 | 1.43921 | 2.56130 | 88 | 17.80841 | 19.76999 |
| 14 | .09589 | .09589 | 39 | .17854 | .30059 | 64 | 1.60155 | 2.81241 | 89 | 19.33267 | 21.08692 |
| 15 | .10758 | .13762 | 40 | .19107 | .32904 | 65 | 1.78129 | 3.08515 | 90 | 20.94168 | 22.42853 |
| 16 | .11926 | .15599 | 41 | .20611 | .36252 | 66 | 1.97513 | 3.37018 | 91 | 22.66794 | 23.82284 |
| 17 | .12844 | .17102 | 42 | .22115 | .39686 | 67 | 2.18574 | 3.67025 | 92 | 24.56577 | 25.33222 |
| 18 | .13345 | .18021 | 43 | .23870 | .43623 | 68 | 2.41241 | 3.98026 | 93 | 26.76407 | 27.31458 |
| 19 | .13846 | .18856 | 44 | .25626 | .47731 | 69 | 2.66044 | 4.31179 | 94 | 29.63735 | 29.94249 |
| 20 | .14013 | .19274 | 45 | .27717 | .52428 | 70 | 2.94130 | 4.67927 | 95 | 33.93112 | 33.93112 |
| 21 | .13929 | .19441 | 46 | .29975 | .57128 | 71 | 3.31274 | 5.08855 | 96 | 41.27938 | 41.27938 |
| 22 | .13679 | .19191 | 47 | .32401 | .62251 | 72 | 3.63093 | 5.55842 | 97 | 56.03986 | 56.03986 |
| 23 | .13428 | .18856 | 48 | .34996 | .67630 | 73 | 4.05839 | 6.08662 | 98 | 83.33333 | 83.33333 |
| 24 | .13094 | .18439 | 49 | .37927 | .73685 | 74 | 4.54126 | 6.66862 | 99 | 83.33333 | 83.33333 |

## Table of Guaranteed Maximum Cost of Insurance Rates - Female

**Basis of Calculation**
Non-Tobacco User:   1980 CSO Female Nonsmoker Table
Tobacco-User:   1980 CSO Female Smoker Table

| Attained Age | Monthly Rate Per $1,000 | | Attained Age | Monthly Rate Per $1,000 | | Attained Age | Monthly Rate Per $1,000 | | Attained Age | Monthly Rate Per $1,000 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Non-Tobacco-User | Tobacco-User | | Non-Tobacco-User | Tobacco-User | | Non-Tobacco-User | Tobacco-User | | Non-Tobacco-User | Tobacco-User |
| 0 | .24121 | .24121 | 25 | .09089 | .10758 | 50 | .34996 | .54694 | 75 | 3.17455 | 3.98816 |
| 1 | .07253 | .07253 | 26 | .09339 | .11175 | 51 | .37592 | .58556 | 76 | 3.58552 | 4.45292 |
| 2 | .06753 | .06753 | 27 | .09506 | .11509 | 52 | .40523 | .62923 | 77 | 4.02941 | 4.94359 |
| 3 | .06586 | .06586 | 28 | .09756 | .11842 | 53 | .43959 | .68050 | 78 | 4.50679 | 5.45796 |
| 4 | .06419 | .06419 | 29 | .10007 | .12343 | 54 | .47480 | .73264 | 79 | 5.03160 | 6.01271 |
| 5 | .06336 | .06336 | 30 | .10340 | .12928 | 55 | .51254 | .78735 | 80 | 5.62720 | 6.63228 |
| 6 | .06086 | .06086 | 31 | .10591 | .13428 | 56 | .55114 | .84209 | 81 | 6.31509 | 7.33837 |
| 7 | .06002 | .06002 | 32 | .10924 | .14013 | 57 | .58975 | .89434 | 82 | 7.11783 | 8.15276 |
| 8 | .05836 | .05836 | 33 | .11258 | .14597 | 58 | .62671 | .94326 | 83 | 8.05280 | 9.08725 |
| 9 | .05752 | .05752 | 34 | .11842 | .15516 | 59 | .66621 | .99389 | 84 | 9.10225 | 10.19935 |
| 10 | .05669 | .05669 | 35 | .12260 | .16184 | 60 | .71246 | 1.04963 | 85 | 10.26879 | 11.32663 |
| 11 | .05752 | .05752 | 36 | .13011 | .17436 | 61 | .76715 | 1.12147 | 86 | 11.53529 | 12.62729 |
| 12 | .06002 | .06002 | 37 | .13929 | .19024 | 62 | .83619 | 1.20861 | 87 | 12.91426 | 13.90116 |
| 13 | .06253 | .06253 | 38 | .14931 | .20778 | 63 | .92301 | 1.32636 | 88 | 14.39531 | 15.36669 |
| 14 | .06670 | .06670 | 39 | .16100 | .22784 | 64 | 1.02598 | 1.45789 | 89 | 16.00739 | 16.78571 |
| 15 | .07003 | .07837 | 40 | .17353 | .25041 | 65 | 1.13753 | 1.60580 | 90 | 17.75602 | 18.45260 |
| 16 | .07337 | .08254 | 41 | .18656 | .27800 | 66 | 1.25772 | 1.75230 | 91 | 19.68512 | 20.26923 |
| 17 | .07870 | .08672 | 42 | .20360 | .30393 | 67 | 1.37980 | 1.90505 | 92 | 21.86482 | 22.30077 |
| 18 | .07921 | .09089 | 43 | .21864 | .33071 | 68 | 1.50291 | 2.04355 | 93 | 23.29047 | 24.66823 |
| 19 | .08171 | .09422 | 44 | .23369 | .35750 | 69 | 1.63474 | 2.19946 | 94 | 27.67145 | 27.67145 |
| 20 | .08421 | .09673 | 45 | .24957 | .38513 | 70 | 1.78726 | 2.36513 | 95 | 32.32212 | 32.32212 |
| 21 | .08505 | .09840 | 46 | .26629 | .41361 | 71 | 1.97000 | 2.58028 | 96 | 40.04678 | 40.04678 |
| 22 | .08672 | .10090 | 47 | .28469 | .44378 | 72 | 2.19689 | 2.84786 | 97 | 55.15920 | 55.15920 |
| 23 | .08755 | .10257 | 48 | .30477 | .47480 | 73 | 2.47434 | 3.17541 | 98 | 83.33333 | 83.33333 |
| 24 | .09005 | .10591 | 49 | .32569 | .50834 | 74 | 2.80204 | 3.55933 | 99 | 83.33333 | 83.33333 |

**EXHIBIT 1   Page 39**

F5604

**(This Page Left Blank Intentionally)**

EXHIBIT 1    Page 40

Page 14

 **JEFFERSON PILOT FINANCIAL**

Please check appropriate underwriting company:
☒ Jefferson-Pilot Life Insurance Company, PO Box 21008, Greensboro, NC 27420-1008
☐ Jefferson Pilot Financial Insurance Company, PO Box 515, Concord, NH 03302-0515

## AMENDMENT TO APPLICATION FOR INSURANCE

Policy No. JF5524737

The undersigned hereby amends his or her application for insurance dated 8/24/2005 on the life of Gordon R A Fishman.

We are authorized to make the following alterations in or additions to the application and to issue a policy as may be necessary to conform to said application as modified herein. I hereby accept the policy as issued.

The total line of insurance to be placed in all companies will not exceed $~~52~~54,000,000.

The undersigned hereby makes the same representations, statements, answers and agreements to Jefferson-Pilot Life Insurance Company  as were made to TransAmerica on the Medical Exam dated July 11, 2005, a copy of which is attached to and made part of this policy.

Dated at _IRVINE, CA_ this _14th_ day of _October_ 20 _05_

_____
Signature of Proposed Insured
(Parent or Guardian if under 14 years of age)

_____
Signature of Owner if other than Proposed Insured

_____
Signature of Witness

_____
Signature of Proposed Insured
(Parent or Guardian if under 14 years of age)

_____
Signature of Owner (if other than Proposed Insured)

_____
Signature of Spouse (if coverage applied for)

BJF-01003

Page 1 of 1
2/01

**EXHIBIT 1    Page 41**



**JEFFERSON PILOT FINANCIAL**

Please check appropriate underwriting company:
☒ Jefferson-Pilot Life Insurance Company, Service Office: PO Box 21008, Greensboro, NC 27420-1008
☐ Jefferson Pilot Financial Insurance Company, Service Office: PO Box 515, Concord, NH 03302-0515
(hereinafter referred to as "the Company")

## APPLICATION FOR LIFE INSURANCE — PART I

### I. PROPOSED INSURED

| 1. Name of Proposed Insured ☒ Male ☐ Female (First, Middle, Last) | 2. Date of Birth (mm/dd/yy) | 3. Place of Birth (State, Country) | 4. Social Security Number |
|---|---|---|---|
| *Gordon R.A. Fishman* | *12/2/1928* | *IL* | *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* |

5. Driver License # & State of Issue: *B 6527033 - CA*

| 6. Home Address (Street, City, State, Zip Code) | 7. Years At This Address |
|---|---|
| *7 Ridgeline Drive   Newport Beach, CA  92660* | *9 yrs* |

| 8. Employer | 9. Business Address (Street, City, State, Zip Code) |
|---|---|

| 10. Occupation/Duties *retired* | 11. Home Telephone | 12. Business Telephone | 13. Citizen of (Country) *USA* |
|---|---|---|---|

### II. PROPOSED ADDITIONAL INSURED - Complete for Survivorship Life Policy or Term Rider on Spouse/Other Insured for Individual Life Policy.      *N/A*

| 14. Name of Proposed Insured ☐ Male ☐ Female (First, Middle, Last) | 15. Date of Birth (mm/dd/yy) | 16. Place of Birth (State, Country) | 17. Social Security Number |
|---|---|---|---|

18. Driver License # & State of Issue

| 19. Home Address (Street, City, State, Zip Code) | 20. Years At This Address |
|---|---|

| 21. Employer | 22. Business Address (Street, City, State, Zip Code) |
|---|---|

| 23. Occupation/Duties | 24. Home Telephone | 25. Business Telephone | 26. Citizen of (Country) |
|---|---|---|---|

### III. COVERAGE INFORMATION

| 27. Plan of Insurance (if Ensemble®, also complete Question 32) | 28. Amount of Insurance: $ *10,000,000* |
|---|---|
| *JPF Legend 300 Plus²* | |

29. (i) Death Benefit Option  ☒ Level  ☐ Increasing  ☐ Specified Amount plus premiums less withdrawals
(ii) Death Benefit Qualification Test  ☐ Cash Value Test  ☒ Guideline Premium Test  ☐ Cash Value Accumulation Test (not available on all products)
**(Cannot be changed after issue. If no selection is made, Guideline Premium Test will apply.)**

| 30. Additional Benefits: | |
|---|---|
| ☐ Disability Waiver of Premium | ☐ (Graded Premium) Lapse Protection Rider |
| ☐ Accidental Death Benefit $ _____ | ☐ Term on Spouse/Other Insured Rider $ _____ |
| ☐ Guaranteed Insurability $ _____ | ☐ Children's Rider $ _____ / Units _____ |
| ☐ Waiver of Specified Premium $_____ | (Complete Child's Supplement) |
| ☐ Accelerated Benefit Rider | ☐ Other _____ |
| ☐ Supplemental Coverage/ | ☐ Other _____ |
| Additional Specified Amount Rider $ _____ | ☐ Other _____ |

31. Automatic Premium Loan  ☐ Yes (if available)  ☐ No

32. **Complete only if applying for Variable Life Insurance with Jefferson Pilot Financial Insurance Company. Submit Premium Allocation and Disclosure Form for Variable Universal Life with Application:**

(i) Monthly insurance and administrative charges will be deducted from the General Account and divisions of the Separate Account on a pro rata basis unless the box is checked below (not available on all VUL products):

☐ Deduct all charges from the _____ division (any single division or the General Account may be noted).

BJF-01734-2 (7/04)

Page 1 of 9
10/04

EXHIBIT 1    Page 42

**(ii) Suitability**

| | Yes | No |
|---|---|---|
| 1. Have you, the Proposed Insured(s) and the Owner, if other than the Proposed Insured(s), received a current Prospectus dated _____ for the policy applied for and have you had sufficient time to review it? | ☐ | ☐ |
| 2. Do you understand that the amount and duration of the death benefit may increase or decrease depending on the investment performance of funds in the Separate Account? | ☐ | ☐ |
| 3. Do you understand that the cash values may increase or decrease depending on the investment performance of the funds held in the Separate Account? | ☐ | ☐ |
| 4. With this in mind, do you believe that the policy applied for is in accord with your insurance objective and your anticipated financial needs? | ☐ | ☐ |

**CASH VALUES MAY INCREASE OR DECREASE IN ACCORDANCE WITH THE EXPERIENCE OF THE SEPARATE ACCOUNT. THE DEATH BENEFIT MAY BE VARIABLE OR FIXED UNDER SPECIFIED CONDITIONS.**

**IV.   OWNER INFORMATION (Complete if Different from Proposed Insured(s))**

33. (i) Owner Name (First, Middle, Last)   |   (ii) Citizen of (Country)

Gordon R. A. Fishman Irrevocable Life Trust dtd 8/17/2005        USA

34. Owner Address

7 Ridgeline Drive   Newport Beach, CA   92660

| 35. Owner Social Security or Tax ID # | 36. Relationship to Proposed Insured(s) | 37. Trust Date (if no Trust, leave blank) |
|---|---|---|
| Applied for | Trust | 8/17/2005 |

**V.   BENEFICIARY DESIGNATION**

| 38. Primary Beneficiary(ies): | 39. Social Security or Tax ID #: | 40. Relationship(s) to Proposed Insured(s): |
|---|---|---|
| Gordon R.A. Fishman Irrevocable Life Trust dtd 8/17/2005 | applied for | Trust |

| 41. Contingent Beneficiary(ies): | 42. Social Security or Tax ID #: | 43. Relationship(s) to Proposed Insured(s): |
|---|---|---|
| | | |

| 44. Beneficiary for Spouse/Other Insured Term Rider: | 46. Relationship to Spouse/Other Insured: |
|---|---|
| | |

45. Social Security or Tax ID #: applied for

**VI.   BILLING INSTRUCTIONS**

47. Cash with Application $ -0-     Was the Conditional Receipt Given? ☐ Yes ☒ No

48. Planned Premium: $ 700,000 yr 1. 425,226 yr 2    49. Lump Sum: $ -0-     ☐ 1035 Amount

50. Premiums to be Paid:   ☒ Annually   ☐ Semi-Annually   ☐ Quarterly   ☐ Monthly   ☐ List Bill # _____
      ☐ DRAFT/PAC   ☐ PDF (Complete Transmittal)   ☐ Other: _____

51. Premium Bill to be Sent to:   ☐ Proposed Insured at:        ☐ Other ("Care Of" Name and Mailing Address)
         ☐ Home Address
         ☐ Business Address; or
      ☐ Proposed Additional Insured at:   ☐ Other ("Care Of" Name and Mailing Address)
         ☐ Home Address
         ☐ Business Address; or
      ☒ Owner at address listed in #34

52. Special Instructions:

Please issue 3 identical policies for 10M on each
Same owner and beneficiary

Page 2 of 9
10/04

BJF-01734-2 (7/04)

**EXHIBIT 1   Page 43**

Complete each question for the Proposed Insured and any Additional Insured.

| VII. PERSONAL FINANCE *See attached financials* | | Proposed Insured | Additional Insured |
|---|---|---|---|
| 53. Annual Earned Income: | | a) $ *13m+* | b) $ |
| 54. Annual Unearned Income: | | a) $ | b) $ |
| 55. Total Assets: | | a) $ | b) $ |
| 56. Total Liabilities: | | a) $ | b) $ |
| 57. Net Worth: *Partial* | | a) $90,750,000 | b) $ |
| 58. In the last 5 years have you filed for bankruptcy?<br>If "Yes", COMPLETE the Financial Supplement. | | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |

| VIII. LIFE INSURANCE IN FORCE | | Proposed Insured | Additional Insured |
|---|---|---|---|
| 59. Have you ever applied for life, health or disability insurance and been declined, postponed or charged an increased premium? | | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| 60. Do you have any applications pending with any other life insurance company now? | | a) ☒ Yes ☐ No | b) ☐ Yes ☐ No |

If answered "Yes" to question 59-60, please give details here for each Proposed Insured.

*#60. Also applying to American General - seeking best offer*

_____

_____

_____

61. Have you or will you replace, discontinue coverage, stop paying premiums, initiate a reduction in face amount, borrow or surrender cash value on any Life Insurance or Annuity if this insurance is issued?  ☐ Yes ☒ No
If yes, please complete all required replacement forms and check the appropriate box in Question 62.

62. List all insurance in force any Proposed Insured. If none, check this box. ☐

| Insured's<br>Name & Company | Face<br>Amount | Policy<br>Number | Issue<br>Year | Replacement or<br>Change of Policy? | Check here if<br>1035 Exchange |
|---|---|---|---|---|---|
| *Protective Life* | $2m - *2nd to Die* | | '88 | ☐ Yes ☒ No | ☐ |
| *Banner Life* | $2m *2nd to Die* | | '90 | ☐ Yes ☒ No | ☐ |
| | $ | | | ☐ Yes ☐ No | ☐ |
| | $ | | | ☐ Yes ☐ No | ☐ |

| IX. GENERAL RISK INFORMATION | | Proposed Insured | Additional Insured |
|---|---|---|---|
| 63. In the past 3 years, have you smoked a cigarette, cigar or pipe, chewed tobacco or used tobacco or nicotine in any form?<br>If "Yes", last used (form)<br>Month, Year | | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| 64. Do you plan to travel or reside outside the US or Canada within the next 12 months? | | a) ☒ Yes ☐ No | b) ☐ Yes ☐ No |
| 65. Are you a member of, or applied to be a member of, or received a notice of required service in, the armed forces, reserves or National Guard?<br>If "Yes", please list: branch of service, rank, duties, mobilization category and current duty station. | | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| 66. In the past 3 years, have you engaged in, or in the future do you plan to engage in, flying in non-commercial aircraft; racing of any kind; skin or scuba diving; parachuting or sky diving; hang gliding; mountain, rock or technical climbing?<br>If "Yes", complete Aviation-Avocation Supplement. | | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| 67. Have you ever been convicted of a felony or misdemeanor (except for a minor traffic violation)? | | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| 68. In the past 5 years, have you been convicted of (i) two or more moving violations, (ii) driving under the influence of alcohol or other drugs, or (iii) had your driver's license suspended or revoked? | | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |

Page 3 of 9
10/04

BJF-01734-2 (7/04)

EXHIBIT 1    Page 44

| IX. | GENERAL RISK INFORMATION (Continued) | Proposed Insured | Additional Insured |
|---|---|---|---|
| 69. | Have you ever been diagnosed by or received treatment from a medical professional for Acquired Immunodeficiency Syndrome (AIDS)? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |

**If answered "Yes" to questions 63-69, please give details here for each Proposed Insured.**

Proposed Insured: _____

#64  Aug.'05 - 2wk vacation to London to visit son

_____

_____

_____

Additional Insured: N/A _____

_____

_____

_____

## X.   MEDICAL INFORMATION

**Proposed Insured:**

70. Name/address/phone number of your personal physician and/or health care facility? (If none, indicate "None".) _____

Norman Bain, M.D. 900 Newport CN Drive #609 Newport Beach, CA 92660

   a. Date and reason last consulted? _____ Jan. '03 _____

   b. Treatment or medication prescribed? _____ Gastrointestinal _____

71. Height _____ 5 _ ft. _____ 11 _ in.  Weight _ 185 _ lbs.

   a. Has your weight changed by more than 10 pounds during the past 12 months?  ☐ Yes ☒ No

   b. If "Yes", by how many pounds? _____ ☐ Gain ☐ Loss

**Additional Insured:** N/A

72. Name/address/phone number of your personal physician and/or health care facility? (If none, indicate "None".) _____

_____

   a. Date and reason last consulted? _____

   b. Treatment or medication prescribed? _____

73. Height _____ ft. _____ in.  Weight _____ lbs.

   a. Has your weight changed by more than 10 pounds during the past 12 months?  ☐ Yes ☐ No

   b. If "Yes", by how many pounds? _____ ☐ Gain ☐ Loss

| 74. | Have you ever had, or been told by a medical professional to seek treatment because of, any of the following: | Proposed Insured | Additional Insured |
|---|---|---|---|
| | i. Chest pain, high blood pressure, heart attack, heart murmur, disease of the heart or blood vessels? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| | ii. Cancer, tumor, leukemia, blood disorder (excluding HIV status), melanoma, or lymphoma? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| | iii. Diabetes or high blood sugar? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| | iv. Shortness of breath, asthma, sleep apnea, emphysema, tuberculosis, or other lung disease? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| | v. Disease of the nervous system, stroke, seizure, paralysis? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| | vi. Mental or nervous disorder, depression, anxiety? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| | vii. Hepatitis, cirrhosis, or other disease of the liver or pancreas? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| | viii. Ulcer, colitis, or other disorder of the stomach or intestines? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| | ix. Disease or disorder of the kidneys, bladder or prostate, or a sexually transmitted disease (excluding HIV status)? | a) ☒ Yes ☐ No | b) ☐ Yes ☐ No |
| | x. Arthritis, disease or injury of the muscles, bones, or joints? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| | xi. In the past 10 years, any other health impairment, congenital deformity or medically or surgically treated condition not mentioned above? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| 75. | Have you ever used or experimented with cocaine, marijuana, or other non-prescription stimulants, depressants, or narcotics? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| 76. | Have you ever been treated, or advised to receive treatment, for use of alcohol or drugs? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |
| 77. | In the past 30 days, have you taken any medication or non-prescription drug? | a) ☒ Yes ☐ No | b) ☐ Yes ☐ No |
| 78. | Are you now planning to seek medical advice or treatment for any reason? | a) ☐ Yes ☒ No | b) ☐ Yes ☐ No |

**Proposed Insured:**

| 79. Family Record | Age if Living | Present Health | Age at Death | Cause of Death |
|---|---|---|---|---|
| Father | | | 61 | Hodgkins |
| Mother | | | 89 | Natural causes |
| Brothers ∅ | | | | |
| Sisters ∅ | | | | |

**Additional Insured:**  N/A

| 80. Family Record | Age if Living | Present Health | Age at Death | Cause of Death |
|---|---|---|---|---|
| Father | | | | |
| Mother | | | | |
| Brothers | | | | |
| Sisters | | | | |

If answered "Yes" to questions 71, 73, 74-78, please give complete details including date of last treatment and name/address/phone number of the attending physician.

**Proposed Insured:**

74 ix. Uric acid stone @ age 30 - removed c̄ basket - has been on xylopri--
since then (Surgeon is dead no info)
BPH, cured c̄ avodair + cardura ~~nssu~~ Dr. Richard David
4955 Van Nuys Blvd  Sherman Oaks, CA 91403

77. Avodart, xylopine, Cardura

**Additional Insured:**  N/A

**XI.  SERVICE OFFICE ENDORSEMENTS (Attach an additional sheet of paper, if necessary)**

## AGREEMENT AND ACKNOWLEDGEMENT

I, the Owner, declare that my tax identification or social security number as shown is correct. I also certify that I am not subject to backup withholding.

Each of the Undersigned declares that:

1. This Application consists of: a) Part I Application; b) Part II Medical Application, if required; c) any amendments to the application(s) attached thereto; and d) any supplements, all of which are required by the Company for the plan, amount and benefits applied for.

2. Unless otherwise provided by the Conditional Receipt, the Company will have no liability under this application unless and until: a) it has been received and approved by the Company at its Service Office; b) the policy has been issued and delivered to the policyowner; c) the first premium has been paid to and accepted by the Company; and d) at the time of delivery and payment, the facts concerning the insurability of each person proposed for insurance are as stated in this application.

3. No agent, broker or medical examiner has the authority to make or modify any Company contract or to waive any of the Company's requirements.

4. Corrections, additions or changes to this application may be made by the Company. Any such changes will be shown under "Service Office Endorsements". Acceptance of a policy issued with such changes will constitute acceptance of the changes. No change will be made in classification (including age at issue), plan, amount, or benefits unless agreed to in writing by the Applicant.

5. I ACKNOWLEDGE receipt of the Notices on the Medical Information Bureau and Fair Credit Reporting Act.

6. I HAVE READ, or have had read to me, the completed Application for Life Insurance before signing below. All statements and answers in this application are correctly recorded, and are full, complete and true. I UNDERSTAND that any false statements or material misrepresentations may result in the loss of coverage under the policy.

## STATE DISCLOSURES

Any person who, with intent to defraud or knowing that he/she is facilitating fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

## TO BE COMPLETED BY AGENT ONLY

(i) Do you know or have you any reason to believe that replacement of insurance is involved?  ☐ Yes  ☒ No

If a replacement is involved, I certify that only company approved sales materials were used in this sale and that copies of all sales materials were left with the applicant.

(ii) I declare that I asked the Proposed Insured(s) each question on the application. The answers have been recorded by me exactly as stated and I know of nothing affecting the insurability of the Proposed Insured(s) which is not fully recorded in this application.

(iii) I declare that I have accurately answered any questions contained in the Agent's Report completed by me in connection with this application.

(iv) Did you see the Proposed Insured(s) on the date of application? ☐ Yes ☒ No   (If not seen, an examination is required.)

(v) I verified the Owner/Applicant's identity by viewing the individual's photograph on a driver's license, passport or other official document and have transcribed the number of such identification below. If applicant is a business or trust entity, I viewed documentation confirming the entity's legal status and state of formation.

☑ Yes  ☐ No   Driver's License, Passport or Other ID#: _Trust agreement dated 8/17/05_

## AUTHORIZATION

Each of the Undersigned declares that:

I authorize any licensed physician, medical practitioner, hospital, clinic or any other medically related facility, insurance support organizations, insurance company, Medical Information Bureau (MIB), consumer reporting agency, employer, financial source or government agency that has any records or knowledge of:

Proposed Insured/Patient ___Gordon R·A· Fishman___

Date of Birth ___12/2/1928___

Proposed Additional Insured/Patient ___N/A___

Date of Birth ___

or the proposed insured's health, including but not limited to transaction records, employment records, financial records, and complete medical records (including information regarding insurance, demographics, referral documents and records from other facilities) or if other, indicate here: ___

to give all such information to Jefferson-Pilot Life Insurance Company or Jefferson Pilot Financial Insurance Company (the Company), their licensed representatives and/or their reinsurers, MediConnect.net Inc, or if other, indicate here: ___GIS___.

I understand that an authorization for release or disclosure of psychotherapy notes may not be combined with an authorization for release or disclosure of any other information (a separate Authorization Page must be completed for release or disclosure of psychotherapy notes).

I understand that the information obtained may be used by the Company to determine eligibility for insurance, or to administer my coverage. The Company may not give the information to any person or entity except: 1) a reinsurer, or other insurers to whom I have applied or may apply; 2) MIB; or 3) any other person or entity who performs business or legal services in connection with the administration of my insurance coverage. I understand that some of these people or entities may not be covered by federal or state privacy regulations and that the information they receive may be redisclosed, however the Company contractually requires them to protect the information we disclose to them. Information may be disclosed as allowed by law or regulation.

I have received a Privacy Practices Notice which details the method I must use to exercise my right to access, correct, and amend any information gathered about me or my children which relates to this application. I understand that I can provide written revocation of this Authorization to the Company at any time, except: 1) if the Company has taken action in reliance on the Authorization; or 2) the Company is using the Authorization in connection with a contestable claim under my policy.

This is not authorization to release HIV-related information unless on HIV Consent Form with authorization for optional release of information to my personal physician has been signed by me.

Page 7 of 9
10/04

BJF-01734-2 (7/04)

EXHIBIT 1   Page 48

## AUTHORIZATION - CONTINUED

I understand that if I refuse to sign this authorization to release my complete medical record, the Company may not be able to process my application.

I agree that a copy of this authorization shall be as valid as the original and this authorization shall be valid for 24 months from the date shown below. I may have a copy upon request.

☐ I elect to be interviewed if an Investigative Consumer Report is prepared.

### SIGNATORY SECTION

Signed at ___Newport Beach, CA___, this __24ᵀᴴ__ day of ___August___, __'05__
(city and state)                    (month)          (year)

_____          _____
Signature of Proposed Insured          Signature of Proposed Additional Insured (if coverage applied for)
(Parent or Guardian if under 14 years of age)

_____
Signature of Owner (if other than Proposed Insured)

_____          __Brian D. Payson__
Signature of Licensed Agent, Broker or Registered Representative          Name of Licensed Agent, Broker or Registered Representative
                                         (Please Print)

### APPLICABLE TO VARIABLE LIFE ONLY

I have reviewed the Application, New Account Form and Premium Allocation and Disclosure Form and find the transaction suitable.

_____          _____
Signature of Registered Principal of Broker/Dealer          Name of Registered Principal of Broker/Dealer (Please Print)

BJF-01734-2 (7/04)

Page 8 of 9
10/04

**EXHIBIT 1    Page 49**

**PART II Continuation of Application to the Jefferson-Pilot Life, Jefferson Pilot Financial or Alexander Hamilton Life Ins. Company**

Proposed (Print, Last, First, Middle Name): _Gordon R. A. Fishman_   Birthdate: (Month-Day-Year) _12|2|192P_
Insured

1. a. Name and address of your personal physician? _Norman Rain, M.D. 400 Newport Cn Dr. #609 Newport Rd, CA 92660_
   b. Date and reason last consulted? _Jan. '03_
   c. What treatment was given or medication prescribed? _Gastro-Intestinal_

2. Have you ever had or been told by a medical professional to seek treatment for any of the following:

| | Yes | No |
|---|---|---|
| a. Disorder of eyes, ears, nose, mouth or throat, including sleep apnea? | ☐ | ☑ |
| b. Head, brain, spinal cord disorder, dizziness, fainting, convulsions, headache, paralysis, stroke, epilepsy, mental or nervous disorder? | ☐ | ☑ |
| c. Shortness of breath, persistent hoarseness or cough, asthma, congestive heart failure, bronchitis, pleurisy, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☑ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart attack, angina, myocardial infarction, murmur or other disorder of the heart or blood vessels? | ☐ | ☑ |
| e. Hepatitis, jaundice, intestinal bleeding, ulcer, colitis, diverticulitis, recurrent indigestion, or other disorder of the stomach or esophagus? | ☐ | ☑ |
| f. Sugar, protein, blood or pus in urine, sexually transmitted disease, stone or other disorder of kidney, bladder or prostate? | ☑ | ☐ |
| g. Diabetes, thyroid or other endocrine disorder? | ☐ | ☑ |
| h. Neuritis, arthritis, gout, or disorder of the muscles, bones, including the spine, back and joints, deformity, lameness or amputation or skin disorder? | ☐ | ☑ |
| i. Cancer, leukemia, removal of any organ, benign tumor, polyp or cyst? | ☐ | ☑ |
| j. Allergies, anemia, disorder of lymph glands, or other disorder of the blood (excluding HIV tests and studies)? | ☐ | ☑ |
| k. Need for treatment because of alcohol or drug abuse? | ☐ | ☑ |
| l. Abnormalities, disease or disorder of the reproductive organs or breasts, menstruation or pregnancy? | ☐ | ☑ |

Details of "Yes" answers. Identify question number, circle applicable items. Include diagnoses, dates, duration, names and addresses, of all physicians and facilities.

_2f. Uric acid stone @ age 30 - removed & passed - has been on xylopurin since then (surgeon is deceased - no info)_
_RPH cared & cryo dest & Cordura_
_Dr. Richard David 4955 Van Nuys Blvd, Sherman Oaks, CA 91403_

_4. Avodart, xylopurin, Cordura_

_6d. Complete P.E & EKG & blood_
_normal - see @ 1/3/06_

3. Have you ever been told by a medical professional you had human immune deficiency virus (HIV) infection or Acquired Immunodeficiency Syndrome (AIDS), or have you received treatment from a medical professional for AIDS? ☐ ☑

4. Are you now under observation or taking treatment, including prescription and/or nonprescription medication? ☑ ☐

5. Has your weight changed by more than 10 lbs. in the past year? ☐ ☑

6. Other than previously answered, have you in the past 5 years:
   a. Had any mental or physical disorder not listed above? ☐ ☑
   b. Had a checkup, consultation, illness, injury or surgery? ☑ ☐
   c. Been a patient in a hospital, clinic or other medical facility? ☐ ☑
   d. Had electrocardiogram, x-ray or other diagnostic test? ☑ ☐
   e. Been advised to have any diagnostic test (excluding HIV tests), hospitalization or surgery which was not completed? ☐ ☑

7. In the past three years, have you smoked a cigarette, cigar or pipe; chewed or used tobacco or nicotine in any form? If "Yes", form _____ last used on _____ (month, year). ☐ ☑

8. Have you ever requested or received a pension, benefits or payment due to an injury, sickness or disability? ☐ ☑

9. To the best of your knowledge and belief are you now pregnant? ☐ ☑

10. Have you ever received a blood transfusion or been refused as a donor? ☐ ☑

11. Are you planning to seek medical advice or treatment for any reason? ☐ ☑

12. Family History: Tuberculosis; diabetes; cancer; high blood pressure; lung, bowel, heart or kidney disease; mental illness; alcoholism; or suicide? ☐ ☑

| Parents | Age if Alive | Age at Death | Cause of Death | Siblings | Age if Alive | Age at Death | Cause of Death |
|---|---|---|---|---|---|---|---|
| Father | | 61 | Hodgkins | Brothers 0 | | | |
| Mother | | 89 | Natural causes | Sisters 0 | | | |

The answers to the above questions are to the best of my knowledge and belief complete, true and written as I gave them. For the purpose of underwriting this Application for Life Insurance, I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurer, reinsurer, the Medical Information Bureau, consumer reporting agency, employer, financial source, or governmental agency that has any records or knowledge of the proposed insureds or their health to give Jefferson-Pilot Life, Jefferson Pilot Financial or Alexander Hamilton Life Insurance Company and its reinsurers such information. I also authorize the foregoing, except for the Medical Information Bureau, to give such information to any consumer reporting agency acting on behalf of Jefferson-Pilot Life, Jefferson Pilot Financial or Alexander Hamilton Life Insurance Company. I further authorize Jefferson-Pilot Life, Jefferson Pilot Financial or Alexander Hamilton Life Insurance Company to give all such information to my personal physician upon request and I waive any privilege to such information. I understand and certify that authorized representative may obtain a copy of this authorization. This authorization shall be valid for 30 months from its date and that a copy of this authorization shall be as valid as the original.

_Newport Beach, CA_
City and state where signed

_8-19-05_
Date

Signature of Proposed Insured (Parents or Guardian if under 14 years of age)

Signature of Examiner

BUF-8314.4

Page 1 of 2
10/01

**EXHIBIT 1   Page 50**